**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William Earl MIMMS, Defendant–Appellant.**

No. 94–40247
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1995.

Richard Harrison (Court-appointed), Sherman, TX, for appellant.

H.S. Garcia, Asst. U.S. Atty., Ruth Harris Yeager, U.S. Atty., Sherman, TX, for appellee.

Before JONES, BARKSDALE and BENAVIDES, Circuit Judges.

PER CURIAM:

William Earl Mimms (Mimms) appeals the amount that the district court reduced his sentence pursuant to his 28 U.S.C. § 2255 motion. Finding the calculation of phenylacetone (P₂P) clearly erroneous, we vacate and remand.

## I. PROCEDURAL HISTORY

William Earl Mimms pleaded guilty to conspiracy to manufacture and distribute amphetamine in violation of 21 U.S.C. § 846. In 1991, pursuant to the sentencing guidelines, the district court properly sentenced him to 151 months imprisonment. Mimms apparently did not take a direct appeal. In 1993, Mimms filed this action under 28 U.S.C. § 2255, seeking to have his sentence reduced by applying an amendment to U.S.S.G. § 2D1.1(c), which adopted a new method for calculating the quantity of drugs to be used in determining the offense level and guideline range. The district court held a hearing at which two expert chemists testified. After making new findings regarding the quantity of drugs involved, the court reduced Mimms' sentence from 151 months to 115 months.

## II. ANALYSIS

A. Treating the claim under 18 U.S.C. § 3582(c)(2).

 In the court below, Mimms, proceeding *pro se* and *in forma pauperis*, filed this action to reduce his sentence under § 2255. "Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir.1992). Even if a defendant alleges a constitutional error, he may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the error. *United States v. Shaid*, 937 F.2d 228, 232

(5th Cir.1991) (en banc), *cert. denied*, ─── U.S. ───, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992).

 Mimms raises this issue for the first time on collateral review. However, because the amendment upon which Mimms relies (§ 2D1.1(c)) did not become effective until November 1, 1993, Mimms could not have raised this claim on a direct appeal. Nevertheless, we have held that this precise claim is not cognizable in a § 2255 action because the sentence was valid at the time of imposition, and thus, "does not give rise to a complete miscarriage of justice." *United States v. Towe*, 26 F.3d 614, 616 (5th Cir.1994).

 However, Mimms could have brought this claim pursuant to 18 U.S.C. § 3582(c)(2). *Towe*, 26 F.3d at 616; *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir.1994). Section 3582(c)(2) allows a court to reduce a defendant's sentence if the term of imprisonment was based on a guideline range that subsequently has been lowered and such a reduction would be consistent with the applicable policy statements in the guidelines. *Towe*, 26 F.3d at 616. The applicable policy statement provides that the amendment at issue may be applied retroactively. U.S.S.G. 1B1.10, p.s. Under § 3582(c)(2), the district court has the discretion whether to reduce the sentence. *United States v. Shaw*, 30 F.3d 26, 28–29 (5th Cir.1994).

Here, in response to the § 2255 motion, the government did not argue that the claim was not cognizable, but rather acknowledged that the amendment should be applied retroactively and moved for an evidentiary hearing to determine the amount of drugs to be used in the new sentence calculation. The district court, after an evidentiary hearing, determined that Mimms was entitled to a reduction under the amended § 2D1.1(c). Because the government had no objection[1] and a hearing was held to determine the reduction pursuant to § 2D1.1(c), we will not put form over substance. The trial court has already conducted the hearing that would be allowed under § 3582(c)(2). For these rea-

---

1. Indeed, the government does not now contest the reduction in the court below or argue that the claim was not cognizable. To the contrary, it

argues that the court below properly calculated the new sentence pursuant to the amended guideline.

sons and in the interest of judicial economy, we treat this action as a proceeding under § 3582(c)(2).

B. Whether the district court's finding that Exhibit 2B contained 20% phenylacetone was clearly erroneous.

 Mimms argues that the district court committed clear error by misinterpreting the expert's testimony and by miscalculating the quantity of drugs to be used to determine his new offense level and new guideline sentence. Apparently, we have not expressly stated the standard of review for findings of fact made in a proceeding under § 3582(c)(2). We review the district court's factual findings in a § 2255 proceeding for clear error. *United States v. Gipson,* 985 F.2d 212, 214 (5th Cir.1993). Likewise, on direct appeal, we review findings of fact made in regard to sentencing for clear error. *United States v. Humphrey,* 7 F.3d 1186, 1189 (5th Cir.1993) (citing 18 U.S.C. § 3742(e)). Accordingly, we now hold that findings of fact made during a § 3582(c)(2) proceeding are reviewed under the clearly erroneous standard. A finding of fact will be set aside as clearly erroneous only if, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *United States v. Fitzhugh,* 984 F.2d 143, 146 n. 12 (5th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 259, 126 L.Ed.2d 211 (1993).

Mimms' original sentence was based on the entire quantities of the substances found to have a detectable amount of controlled substance in accordance with the version of § 2D1.1(c) in effect in 1991. In 1993, § 2D1.1(c) was amended to provide that:

[m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include ... waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is

counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

§ 2D1.1(c), comment. (n.1); U.S.S.G.App. C, amend. 484.

For Mimms' original sentence, the court used the entire weight of the mixture in Exhibit 2B, consisting of three containers holding 32.40 pounds of a slurry-liquid substance containing a detectable amount of $P_2P$.[2] In the current proceedings, based on the expert testimony at the hearing, the court below found that Exhibit 2B, after deducting the weight of the containers, contained 20 per cent $P_2P$ by weight, amounting to 6.18 pounds of $P_2P$.

Mimms argues that Max Courtney, a chemist appointed by the court for Mimms, testified that only 20 per cent of the 91.55 grams of liquid poured from Exhibit 2B was $P_2P$, as opposed to the court's finding that 20 per cent (6.18 pounds) of the entire weight of Exhibit 2B (31.9 pounds) was $P_2P$. He asks this Court to find that Exhibit 2B contained at most 91.55 grams of $P_2P$ and reduce his sentence further accordingly. The government argues that the court used a reasonable method to calculate the quantity of $P_2P$. *See* § 2D1.1(c), comment. (n.1).

Courtney testified that he reviewed the report and notes of Kenneth Evans, the chemist who performed the original analysis of the substances. The exhibits were destroyed after sentencing and were no longer available for Courtney to conduct his own analysis. In regard to Exhibit 2B, Courtney testified that it consisted of three jugs containing white substance and a small amount of liquid. The liquid portion was poured from all three containers, and the crystalline portion remained in the jugs. The liquid portion weighed 91.55 grams, and this liquid appeared to be from a reaction mixture. Usually, the liquid from the reaction mixture runs about 20 per cent $P_2P$. He could not determine the exact amount of $P_2P$ because Evans did not perform a quantitative analy-

---

**2.** There were other exhibits containing varying quantities of drugs but those amounts are not in

dispute on this appeal.

sis. The worst case scenario would be 91.55 grams of P₂P.

Evans testified that he could not quantify the amount of $P_2P$ in Exhibit 2B because the substance was slurry or slushy and that he was unable to separate the liquid portion from the solid material in it. He testified that he poured out a representative sample of 91.55 grams to test and found a detectable amount of $P_2P$. He testified that it could be a trace amount, or it could be more. However, he thought that there was less than 91.55 grams of $P_2P$ in Exhibit 2B.

The district court obtained the 20 per cent figure from Courtney's testimony. However, Courtney did *not* testify that 20 per cent of the *entire* weight of Exhibit 2B was $P_2P$. The 20 per cent figure referred to "the liquid from the reaction mixture." The weight of the liquid from the reaction mixture was 91.55 grams. Further, Courtney's interpretation of Evans' notes conflicts with Evans' testimony about the nature of Exhibit 2B. Courtney testified that his interpretation of Evans' notes was that the sample of 91.55 grams which was tested was the liquid portion of the exhibit and was not a representative sample. Both experts agreed that $P_2P$ is a clear liquid, that the crystalline solid in Exhibit 2B could not be $P_2P$, and that Exhibit 2B also contained a detectable amount of sodium acetate.

Purporting to rely upon Courtney's testimony, the district court found that Exhibit 2B contained 6.18 pounds of $P_2P$, calculated by taking 20 per cent of the entire weight of the exhibit minus the weight of the containers. The court stated that reliance on the expert testimony of a chemist experienced in analysis of such materials as to the quantity of $P_2P$ typically found in such material is a reasonable method to approximate the weight of the substance to be counted. This was obviously a reference to the language in the commentary to § 2D1.1(c), which provides that if materials such as waste water cannot be readily separated from the mixture or substance to be counted, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted. § 2D1.1(c), comment. (n.1).

Although reliance on expert testimony clearly is a reasonable method, the court's finding in this instance apparently is based on a misinterpretation of the expert's testimony.[3] The testimony of neither expert supports the court's finding that 20 per cent of the entire amount of Exhibit 2B was $P_2P$. Indeed, both experts opined that Exhibit 2B contained less than 91.55 grams of $P_2P$. Accordingly, their testimony indicates that the actual amount of $P_2P$ in Exhibit 2B was significantly less than the 6.18 pounds found by the court. A review of the entire evidence leaves one with the definite and firm conviction that a mistake was made.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED and REMANDED to the district court for further factual findings in accordance with this opinion.

---

**3.** The government argues that this Court should not consider Courtney's affidavit because it was not part of the record below. Because the district court's error is clear from reading the transcript of the hearing, the affidavit does not add anything to the record.