UNITED STATES of America,
Plaintiff–Appellee,

v.

Elmer Dean ALLISON, Defendant–
Appellant.

No. 94–50536.

United States Court of Appeals,
Fifth Circuit.

Aug. 15, 1995.

Scott Peterson (court-appointed), Waco, TX, for appellant.

Joan E.T. Sterns, Richard L. Durbin, Jr., Asst. U.S. Attys., James H. DeAtley, Acting U.S. Atty., San Antonio, TX, for appellee.

Before WISDOM, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant Elmer Dean Allison (Allison) appeals the district court's denial of his motion to modify his sentence under 18 U.S.C. § 3582(c)(2). We affirm.

### Facts and Proceedings Below

On November 30, 1988, the Central Texas Narcotics Task Force executed a search warrant at Allison's residence and property in McGregor, Texas. During the search, the officers found an operating methamphetamine laboratory, drug-making paraphernalia, guns, and ammunition. The officers were accompanied by Deborah Reagan (Reagan), a chemist with the Texas Department of Public Safety. After Allison's arrest, he was released on an unsecured bond, left the state, and failed to appear for a scheduled hearing. Allison was arrested in Dayton, Ohio, on

February 1, 1990. He was returned to Texas for trial.

On August 1, 1990, a jury convicted Allison of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(c) (Count Two), use of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c) (Count Three), and failure to appear in court after having been released on bond in violation of 18 U.S.C. § 3146 (Count Four). The original Presentence Report (PSR) calculated that methamphetamine in an amount equivalent to 12.23 kilograms of heroin had been seized from the laboratory at Allison's residence.[1] Because the conspiracy involved the equivalent of more than 10 kilograms of heroin, the PSR determined Allison's base offense level for Count One to be 36. *See* U.S.S.G. § 2D1.1(c)(2). The PSR recommended a two-level increase in Allison's offense level for obstruction of justice, bringing his total offense level to 38. Given Allison's criminal history category of V, his sentencing guideline range was 360 months to life, but the statutory maximum for the drug conspiracy count was 240 months. 21 U.S.C. § 841(b)(1)(C). The district court adopted the factual findings and guideline application in the PSR and sentenced Allison to the statutory maximum on Count One.[2] We affirmed Allison's convictions and sentence. *United States v. Allison*, 953 F.2d 870 (5th Cir.), *cert. denied*, 504 U.S. 962, 112 S.Ct. 2319, 119 L.Ed.2d 238 (1992), *modified on reh'g*, 986 F.2d 896 (5th Cir.1993).

Allison filed two motions under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The district court denied both motions. No appeal was taken. In its order denying Allison's second section 2255 motion, the district court declined to address Allison's challenge to his sentence based on

Amendment 484 to U.S.S.G. § 2D1.1, noting that such an argument was properly raised in a motion for modification of sentence under 18 U.S.C. § 3582(c)(2). Allison then filed the instant section 3582(c)(2) motion, arguing that, under Amendment 484, he could only be sentenced on the basis of the 279.92 grams of methamphetamine in his possession at the time of his arrest. The district court appointed counsel for Allison, ordered the preparation of a second addendum to the PSR, and scheduled an evidentiary hearing on the motion. After the July 22, 1994, evidentiary hearing, the district court denied the motion. Allison now appeals the district court's denial of his § 3582(c)(2) motion.

## Discussion

■ We review a district court's decision whether to reduce a sentence under section 3582(c)(2) for abuse of discretion. *United States v. Pardue*, 36 F.3d 429, 430 (5th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995); *United States v. Shaw*, 30 F.3d 26, 28 (5th Cir.1994). In exercising this discretion, the Guidelines instruct the district court to "consider the sentence that it would have imposed had the amendment(s) … been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b). We review a district court's findings of fact under section 3582(c)(2) for clear error. *United States v. Mimms*, 43 F.3d 217, 220 (5th Cir.1995).

■ At the time of Allison's original sentencing, the drug quantity table in section 2D1.1 provided that "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." Amendment 484 modified the application note to section 2D1.1:

"Mixture or substance [as used in this guideline] does not include materials that

---

1. The PSR listed the following amounts: 279.92 grams of methamphetamine, 65 pounds of methamphetamine, 25 ounces of methamphetamine, 297.09 grams of phenylacetone.

2. The district court also sentenced Allison to a concurrent 120–month term on Count Two, a consecutive 60–month term on Count Three, and

a consecutive 46–month term on Count Four. In addition, the district court sentenced Allison to three-year concurrent terms of supervised release on each count and ordered him to pay a $1,000 fine and a $50 special assessment on each count. Allison does not challenge these sentences.

must be separated from the controlled substance before the controlled substance can be used ... If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted."

Section 1B1.10(c) provides that Amendment 484 should be applied retroactively.

Allison argues that the district court abused its discretion by refusing to modify his sentence based on Amendment 484, asserting that under this amendment his sentence could only be based on the 279.92 grams of methamphetamine that he possessed when he was arrested.[3] The second addendum to the PSR provided two separate bases for denying Allison's section 3582(c)(2) motion. First, it recalculated the drug amount attributable to Allison to be 1,413.92 grams.[4] With the two-point enhancement for obstruction of justice, Allison's total offense level based on 1,413.92 grams of methamphetamine was 34. The sentencing guideline range for a defendant with a total offense level of 34 and a criminal history category of V is 235 to 293 months. The statutory maximum sentence for Count One is 240 months,

making the guideline range 235 to 240 months. Because Allison's original sentence of 240 months on Count One was within this range, the district court declined to modify Allison's sentence.

Alternatively, the second addendum to the PSR stated that the large amount of wash found at Allison's residence, as well as the supplies seized, were relevant to the size and capability of the laboratory. The second addendum to the PSR noted that "the Government intends to specifically address the capability of the lab issue on the date of the resentencing hearing." At the evidentiary hearing, Reagan testified that, based on her observations during the search and on her substantial experience in visiting over 180 clandestine methamphetamine laboratories, the methamphetamine laboratory at Allison's residence had the capability to produce 10 pounds or more of finished methamphetamine. Allison presented no evidence at the evidentiary hearing and thus never rebutted Reagan's testimony that the laboratory had the capability to produce 10 pounds of finished methamphetamine.[5] In its July 22, 1994, order denying Allison's section 3582(c)(2) motion, the district court specifically stated its finding that Allison's "activi-

3. Using the 279.92 gram amount and applying a two-point enhancement for obstruction of justice, Allison calculates his sentencing guideline range to be 140 to 175 months.

4. The second addendum to the PSR, citing Amendment 484, agreed not to count the 42 pounds and the 25 ounces of liquid mixtures in recalculating the drug amount. In addition, the second addendum to the PSR concluded that the 23 pounds of ether wash should not be counted as methamphetamine under Amendment 484. It also noted that 54.52 grams of methamphetamine powder were seized at Allison's residence and that four reaction mixtures (exhibits 5–8) were found during the search. Because all liquid exhibits were destroyed after trial, there was no evidence concerning the weights of exhibits 5, 6, and 8. The weight of exhibit 7, however, was known to be 225.4 grams. Moreover, in his section 3582(c)(2) motion, Allison acknowledged that exhibit 7 was methamphetamine and that "[a]t the time of his arrest [he] was in possession of 279.92 grams of methamphetamine."

The second addendum to the PSR then considered exhibits 5, 6, and 8. (The original PSR did not consider these exhibits, and no tests were ever performed on them). Relying on Reagan's estimations, it calculated that exhibits 5, 6, and 8 would have produced 2.5 pounds (or 1,134 grams) of methamphetamine. Based on these amounts, the second addendum to the PSR calculated the total drug amount to be 1,413.92 grams.

5. At oral argument, Allison asserted that the second addendum to the PSR stated that the laboratory had the capacity to produce 2.5 pounds of methamphetamine. Allison confuses the distinction between the amount of the controlled substance seized and the size and capability of the laboratory. The PSR determined that, based on Reagan's estimations, exhibits 5, 6, and 8 would produce 2.5 pounds (or 1,134 grams) of methamphetamine and used this amount in calculating the amount of methamphetamine attributable to Allison. The 2.5 pound figure is only the amount of the methamphetamine that would be produced by cooking exhibits 5, 6, and 8. It is not, however, the capacity of the laboratory, which Reagan testified was 10 pounds. The second addendum to the PSR specifically stated that the government would present evidence concerning the capability of the laboratory at the evidentiary hearing.

ties indicated a significant drug lab operation."[6]

Allison bases his argument on appeal solely on the actual amount of methamphetamine seized, ignoring the fact that the capacity of the laboratory provides a separate, independent basis upon which he can be sentenced. See U.S.S.G. § 2D1.1, Application Note 12 ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, *and the size or capability of any laboratory involved.*") (emphasis added); see also United States v. Smallwood, 920 F.2d 1231, 1237 (5th Cir.) (holding that this application note permits the district court to base the defendant's sentence on the production capability of a methamphetamine laboratory), cert. denied, 501 U.S. 1238, 111 S.Ct. 2870, 115 L.Ed.2d 1035 (1991).

We note that Amendment 484 does not speak to the situation in which the district court is sentencing the defendant based on the size and capability of the laboratory involved; instead, the amendment instructs the district court that the full weight of mixtures cannot be attributed to the defendant as the amount seized. If the district court is sentencing the defendant based on the size and capability of the laboratory, it is the size and production capacity of the laboratory, not the actual amount of methamphetamine seized, that is the touchstone for sentencing purposes. Because we hold that the district court could properly sentence Allison based

on the size and capability of the laboratory, we do not consider the merits of Allison's challenge to the district court's calculations of the amount of drugs attributable to him using exhibits 5, 6, and 8.

Allison also argues that his case should be remanded to the district court because it is unclear whether the methamphetamine was d-methamphetamine or l-methamphetamine. There are arguably three different forms of methamphetamine: l-methamphetamine, d-methamphetamine, and dl-methamphetamine. United States v. Carroll, 6 F.3d 735, 743 (11th Cir.1993), cert. denied, —— U.S. ——, 114 S.Ct. 1234, 127 L.Ed.2d 577 (1994); cf., United States v. Bogusz, 43 F.3d 82, 89 n. 10 (3d Cir.1994) (recognizing only two forms of methamphetamine, because it considered dl-methamphetamine as "merely being a combination of the two forms"), cert. denied, —— U.S. ——, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995). During her testimony at the evidentiary hearing, Reagan testified that "[i]n these reactions produced by phenylacetone, the methamphetamine produced is 'DL' methamphetamine, a combination of the two isomers." Reagan then agreed with the statement of Allison's counsel that dl-methamphetamine "means one-half 'D' and one-half 'L.'" See Carroll, 6 F.3d at 743 (stating that "DL-methamphetamine . . . is composed of 50% L-methamphetamine and 50% D-methamphetamine"). Allison never disputes this definition of dl-methamphetamine. We interpret Reagan's testimony to mean that Allison's laboratory had the capacity to produce 10 pounds of dl-methamphetamine.[7] Because dl-methamphetamine is one-half d-methamphetamine, the laboratory had the capacity to produce 5 pounds (or 2.268 kilograms) of d-methamphetamine. According to the drug quantity

---

**6.** We note that Allison told the police at the time of his arrest that the methamphetamine laboratory had been "cooking constantly for two weeks." In his objections to the original PSR, Allison denied that he ever made such a statement. The addendum to the PSR, however, concluded that Allison did in fact make the statement. This statement provides further support for Reagan's testimony that the laboratory had the capacity to produce 10 pounds of methamphetamine.

**7.** We note that there is no evidence that the laboratory produced purely l-methamphetamine. Moreover, we question why anyone would set up a laboratory to produce l-methamphetamine, given that it "produces little or no physiological effect when ingested." Bogusz, 43 F.3d at 89.

table in the sentencing guidelines, 2.268 kilograms of d-methamphetamine yields a base offense level of 36. U.S.S.G. § 2D1.1. The two-point enhancement for obstruction of justice brings the total offense level to 38. Given Allison's criminal history category of V, his guideline range would be 360 months to life. U.S.S.G. Chap. V. Because the guideline sentencing range provides for a higher sentence than statutory maximum sentence of 240 months, the statutory maximum becomes the guideline sentence. *See* U.S.S.G. § 5G1.1(c)(1). Thus, based on the unrebutted testimony that the methamphetamine laboratory had the capacity to produce 10 pounds of dl-methamphetamine (which necessarily includes 5 pounds of d-methamphetamine), Allison would receive the mandatory minimum sentence of 240 months, the same sentence he originally received. The district court therefore did not abuse its discretion in refusing to modify Allison's sentence.

### Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.