**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George DEAN, James Earl Cofer, Kenneth
Dewayne Smith, and Kenneth Earl
Flowers, Defendants–Appellants.**

No. 94–10247.

United States Court of Appeals,
Fifth Circuit.

July 21, 1995.

Rehearing Denied Aug. 23, 1995.

Paul H. Williamson (Court-appointed), Burdett, Morgan & Thomas, Amarillo, TX, for Dean.

Frederic M. Wolfram (Court-appointed), Amarillo, TX, for Cofer.

Mark Wilson (Court-appointed), Amarillo, TX, for Flowers.

Sam Ogan, Asst. Federal Public Defender, Amarillo, TX, for Smith.

Vicki H. Lamberson, Christy Drake, Asst. U.S. Attys., Paul E. Coggins, U.S. Atty., Amarillo, TX, for appellee.

Before WISDOM, JONES and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

George Dean, James Earl Cofer, Kenneth Dewayne Smith, and Kenneth Earl Flowers were indicted by a federal grand jury on charges of conspiring to possess with intent to deliver crack cocaine,[1] possessing with intent to deliver crack cocaine,[2] and using or carrying a firearm during a drug trafficking crime.[3] Dean and Cofer were convicted on the drug counts, but acquitted on the weapons count;[4] Smith and Flowers were convicted on all three counts.[5] We affirm Dean,

---

1. See 21 U.S.C. §§ 841(a)(1), 846 (1988).

2. See 21 U.S.C. § 841(a)(1).

3. See 18 U.S.C. § 924(c) (1988).

4. Dean and Cofer were sentenced to 151 months' imprisonment, a mandatory assessment, and a term of supervised release.

5. Smith was sentenced to 228 months' total imprisonment, a mandatory assessment, and a term of supervised release. Flowers was sentenced to 151 months' imprisonment, a mandatory assessment, and a term of supervised release.

Cofer, Smith, and Flowers' convictions, but vacate their sentences and remand for resentencing.

## I

The Amarillo Police Department arrested George Dean, James Earl Cofer, Kenneth Dewayne Smith, and Kenneth Earl Flowers with the cooperation of informants Jackie Small and Calvin Thomas. Small and Thomas, who had been arrested in New Mexico for possessing crack cocaine, agreed to help the Amarillo police set up a purchase of five ounces of crack cocaine from Fred Espy, a dealer Small and Thomas knew in Amarillo. Small telephoned Espy, but Flowers returned her call. Small and Flowers discussed the possibility of Small's purchasing five ounces of crack cocaine. Later, Small and Thomas went to Espy's house to discuss the transaction with Espy personally. At that time, Espy agreed to sell Small and Thomas five ounces (about 141.75 grams) of crack cocaine for $5,000. When Small and Espy spoke again, Espy told Small that he would deliver the drugs to her motel room.

The Amarillo police hid a camera inside the motel room where the transaction was to take place, and ten police officers hid in the next-door room. Six other officers watched the motel's parking lot. One of these officers testified that he had observed a vehicle pull into the parking lot and park, and then, a few seconds later, another vehicle pull into the lot and park behind the first vehicle. Three men emerged from the first vehicle, and two men from the second, but the officer was unable to identify who had been in which vehicle. The five men congregated between the vehicles for approximately ten seconds, and then walked toward the motel room where Small and Thomas were waiting. Three of the men entered the motel room; the remaining two, later identified as Dean and Cofer, remained outside.

Smith, Flowers, and Espy entered the motel room and closed the door behind them. Once inside, Smith took several small bags containing a total of 123.7 grams (about 4.36 ounces) of crack cocaine from his clothes and placed them on the bed. Espy was nearby, making conversation with Small and Thomas, and Flowers stood in front of the closed door. Thomas asked Small to retrieve the money to pay for the drugs from a car parked outside. Immediately after Small exited through the front door, the police entered the motel room through both the front door and an interior door.

Deputy Sheriff Charles Jones testified that after Smith, Flowers, and Espy entered the motel room, Dean and Cofer "peeled off kind of to the right and walked out into the parking lot. They separated, one would go this way, the other this way, all the while turning their head." Jones testified that Dean and Cofer walked back and forth in front of the room approximately four or five times, each time covering from 60 to 70 feet. Jones also testified that, on each pass, Dean and Cofer would "disappear briefly, for three or four seconds around the corner of the motel and then be back." Jones testified that Dean and Cofer behaved in this manner until Small emerged from the motel room, and he characterized their behavior as that of lookouts.[6]

The police fired their guns several times during the raid, fatally wounding Espy, and wounding Thomas and an officer who was in the next room.[7] When gunfire erupted in the motel room, Dean and Cofer fled from the scene. Cofer was apprehended and arrested outside the motel room, and Dean was arrested within 100 feet of the motel. The police found no drugs on either Dean or Cofer. In addition to the drugs found on the bed in the motel room, police found 24.5 grams of crack cocaine in Espy's pants and underwear, 5.3 grams in Smith's underwear, and .82 grams in Flowers' sock.

Dean, Cofer, Smith, and Flowers were convicted in federal district court of conspiring to possess with the intent to deliver crack cocaine and of possessing with the intent to deliver crack cocaine. Smith and Flowers were also convicted of using or carrying a

---

6. The videotape of the drug transaction shows that approximately 48 seconds passed from the time Smith, Flowers, and Espy entered the room to the time that Small exited.

7. Of Smith, Flowers, and Espy, only Espy was armed.

firearm during a drug trafficking crime. Dean, Cofer, Smith, and Flowers appeal their convictions and sentences on several grounds.

## II

■ Dean, Cofer, Smith, and Flowers argue that insufficient evidence supports their convictions. In our review of the sufficiency of the evidence supporting the jury's verdict, "we determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Pruneda–Gonzalez,* 953 F.2d 190, 193 (5th Cir.), *cert. denied,* 504 U.S. 978, 112 S.Ct. 2952, 119 L.Ed.2d 575 (1992); *see also United States v. Quiroz–Hernandez,* 48 F.3d 858, 865 (5th Cir.1995) ("[T]he inquiry into the sufficiency of the evidence is whether the jury could reasonably, logically and legally infer that the defendant was guilty beyond a reasonable doubt."); *United States v. Jaramillo,* 42 F.3d 920, 922–23 (5th Cir.) (same), *cert. denied,* — U.S. ——, 115 S.Ct. 2014, 131 L.Ed.2d 1013 (1995); *United States v. Fierro,* 38 F.3d 761, 768 (5th Cir.1994) (same), *cert. denied,* — U.S. ——, 115 S.Ct. 1388, 131 L.Ed.2d 240 (1995).[8] We recognize that the jury was "free to choose among all reasonable constructions of the evidence," *United States v. Chaney,* 964 F.2d 437, 448 (5th Cir.1992), and we "accept all credibility choices that tend to support the jury's verdict." *United States v. Anderson,* 933 F.2d 1261, 1274 (5th Cir.1991); *see also Jaramillo,* 42 F.3d at 922–23 ("The jury retains sole responsibility for determining the weight and credibility of the evidence."); *United States v. Zuniga,* 18 F.3d 1254, 1260 (5th Cir.) ("We will not second guess the jury in its choice of which witnesses to believe."), *cert. denied,* — U.S. ——, 115 S.Ct. 214, 130

L.Ed.2d 142 (1994). We view the evidence, both direct and circumstantial, as well as all reasonable inferences from that evidence, in the light most favorable to the verdict. *Jaramillo,* 42 F.3d at 923; *Fierro,* 38 F.3d at 768. Moreover, we determine only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence. *See Jaramillo,* 42 F.3d at 923 ("A review concentrates on whether the trier of fact made a rational decision to convict or acquit, not whether the fact finder correctly determined the defendant's guilt or innocence."). "Further, the evidence need not exclude every reasonable hypothesis of innocence." *Jaramillo,* 42 F.3d at 923; *United States v. Leed,* 981 F.2d 202, 207 (5th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 2971, 125 L.Ed.2d 669 (1993). "However, we must reverse a conviction if the evidence construed in favor of the verdict 'gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged.'" *Jaramillo,* 42 F.3d at 923 (quoting *United States v. Menesses,* 962 F.2d 420, 426 (5th Cir.1992)); *accord United States v. Pennington,* 20 F.3d 593, 597 (5th Cir.1994).

## A

Dean, Cofer, and Flowers contend that insufficient evidence supports the jury's verdict against them on the conspiracy count. The Government presented the following evidence of the conspiracy at trial: (1) Pictures of Dean, Cofer, and Flowers were found in the glove compartment of Espy's car; (2) Cofer was seen at Espy's house in the afternoon before the drug transaction; (3) Small identified Flowers as the person with whom she spoke on the telephone to arrange to buy crack cocaine from Espy; (3) Dean, Cofer, Flowers, Espy, and Smith arrived in the parking lot of the motel at about the same time, but in two separate vehicles;[9] (4) Dean, Cofer, Flowers, Espy, and Smith gath-

---

8. We apply this standard of review because Dean, Cofer, Smith, and Flowers each preserved his sufficiency of the evidence claim by moving for a judgment of acquittal at trial. We apply a stricter standard when a defendant fails to preserve a sufficiency claim. *See United States v. Galvan,* 949 F.2d 777, 782–83 (5th Cir.1991) (applying "manifest miscarriage of justice" stan-

dard where defendant failed to move for a directed verdict or a judgment of acquittal).

9. The government agent observing their arrival was unable to determine who arrived in which car. Three individuals arrived in the car that was later identified as belonging to Espy, and two arrived soon thereafter in a truck.

ered between the vehicles for about ten seconds, and then walked toward the room in which the government informants were waiting; (5) Flowers, Espy, and Smith entered the motel room, but Dean and Cofer remained outside; (6) As Espy closed the door to the motel room behind him, Small asked: "Who's that outside? Who is that behind y'all?" Espy answered: "Oh, that's some of my people. I didn't know what was gonna happen;" (7) Inside the motel room, Flowers stood near the door as the drug transaction took place; (8) Outside the motel room, Dean and Cofer walked out into the parking lot and then separated. Each walked "back and forth" in front of the motel room, acting like lookouts; (9) When gunfire erupted inside the motel room, Dean and Cofer fled; and (10) The police found crack cocaine taped to Flowers' ankle.

 "To establish the offense of a drug conspiracy, the Government must prove beyond a reasonable doubt that a conspiracy existed, that the accused knew of the conspiracy, and that he voluntarily joined it." [10] The Government need not prove these elements through direct evidence; the jury may infer each element of a conspiracy from circumstantial evidence.[11] Nevertheless, "while circumstantial evidence may be particularly valuable in proving the existence of the conspiratorial agreement, we have repeatedly stressed that we will not lightly infer a defendant's knowledge of and participation in a conspiracy." [12] Thus, "placing a defendant in a 'climate of activity that reeks of something foul' is not enough to support a conspiracy

conviction." [13] Evidence that a defendant "more likely than not" knowingly joined a conspiracy is insufficient for the Government to prove its case beyond a reasonable doubt. *United States v. Espinoza–Seanez*, 862 F.2d 526, 538 (5th Cir.1988).

1

 Dean argues that there is no evidence in the record that he " 'agreed' to do anything at all, much less that he had the deliberate intent to participate in the conspiracy to possess or distribute drugs." Cofer claims that "the government has simply failed to prove beyond a reasonable doubt that Defendant Cofer agreed to help with the sale of the drugs in the hotel room." The Government contends that based on the evidence it presented at trial, the jury could have concluded beyond a reasonable doubt that Dean and Cofer knowingly agreed to act as lookouts for the drug transaction.

Taking the Government's evidence in the light most favorable to the verdict, we know that Dean and Cofer were both associates of Espy; that they either met Espy at the motel where Espy had arranged to sell crack cocaine, or arrived there with Espy; that they were present outside the motel room during the transaction; that Espy indicated to the informants that they were there to act as lookouts for the transaction; that their movements outside the motel room were consistent with those of individuals acting as lookouts; and that they fled the scene when

---

**10.** *United States v. Limones*, 8 F.3d 1004, 1009 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1543, 128 L.Ed.2d 194 (1994); *accord Quiroz–Hernandez*, 48 F.3d at 866; *Fierro*, 38 F.3d at 768; *United States v. Bermea*, 30 F.3d 1539, 1551 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1113, 130 L.Ed.2d 1077 (1995); *United States v. Puig–Infante*, 19 F.3d 929, 936 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 180, 130 L.Ed.2d 115 (1994).

**11.** *United States v. Cardenas*, 9 F.3d 1139, 1157 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2150, 128 L.Ed.2d 876 (1994).

**12.** *United States v. Maltos*, 985 F.2d 743, 746 (5th Cir.1992) (citing *United States v. Jackson*, 700 F.2d 181, 185 (5th Cir.), *cert. denied*, 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983)).

**13.** *United States v. Ornelas–Rodriguez*, 12 F.3d 1339, 1345 (5th Cir.) (quoting *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir.1982)), *cert. denied*, —— U.S. ——, 114 S.Ct. 2713, 129 L.Ed.2d 839 (1994); *accord United States v. Velgar–Vivero*, 8 F.3d 236, 241 (5th Cir.1993) (" 'It is not enough … that the evidence places the defendant in a climate of activity that reeks of something foul.' " (quoting *United States v. Sacerio*, 952 F.2d 860, 863 (5th Cir.1992)), *cert. denied*, —— U.S. ——, 114 S.Ct. 1865, 128 L.Ed.2d 486 (1994); *Maltos*, 985 F.2d at 746 ("Thus, the government may not prove up a conspiracy merely by presenting evidence placing the defendant in 'a climate of activity that reeks of something foul.' " (quoting *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir.1982)).

gunfire erupted inside the motel room and did not seek assistance.

We have consistently emphasized that each of these facts, standing alone, does not provide sufficient evidence that Dean and Cofer knew of the conspiracy and voluntarily joined it. Mere presence and association alone cannot support a conspiracy conviction. *See, e.g., Velgar–Vivero,* 8 F.3d at 241 ("[I]t is not enough that the defendant merely associated with those participating in a conspiracy ...." (quoting *Sacerio,* 952 F.2d at 863)); *United States v. Martinez–Moncivais,* 14 F.3d 1030, 1034 (5th Cir.) ("[W]e have said that it is irrational for a trier of fact to infer from a person's mere random presence alone that the person was a knowing participant in the conspiracy." (emphasis omitted)), *cert. denied,* —— U.S. ——, 115 S.Ct. 72, 130 L.Ed.2d 27 (1994). Similarly, evidence that a person's behavior coincided with that characteristic of a lookout cannot, given no other evidence of guilt, show knowledge of a conspiracy. *See Menesses,* 962 F.2d at 427 (holding that testimony from FBI agent that defendant's conduct was consistent with that of a person conducting countersurveillance was insufficient evidence of defendant's knowledge of and involvement in conspiracy). Flight from the scene also is not enough on its own. *See United States v. Lopez,* 979 F.2d 1024, 1030 (5th Cir.1992) (noting that "flight alone is insufficient to support a guilty verdict"), *cert. denied,* —— U.S. ——, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993).

That each fact alone cannot be sufficient, however, does not mean that it is not probative. Indeed, "presence is still a significant factor to be considered within the context of the circumstances under which it occurs." *Quiroz–Hernandez,* 48 F.3d at 867; *see also Fierro,* 38 F.3d at 768 ("The jury may infer a conspiracy from circumstantial evidence and may rely upon presence and association, along with other evidence."); *United States v. Robles–Pantoja,* 887 F.2d 1250, 1254 (5th Cir.1989) ("The jury may infer a conspiracy agreement from circumstantial evidence, and may rely upon presence and association, along with other evidence, in finding that a conspiracy existed." (citations omitted)). Also, "evidence of flight is a factor from

which a jury could infer guilty knowledge." *Quiroz–Hernandez,* 48 F.3d at 866; *see also Lopez,* 979 F.2d at 1030 (noting that evidence that a defendant fled the scene "is relevant and admissible, and the jury could take into account [a defendant's] flight"). "Acts which are not per se unlawful lose that character when cumulatively viewed as the constitutional elements of a conspiracy." *United States v. Medina,* 887 F.2d 528, 530 (5th Cir.1989).

Accordingly, although each individual circumstance may not suffice alone, the combination of circumstances can create sufficient evidence of guilt. *See United States v. Rodriguez,* 15 F.3d 408, 412 (5th Cir.1994) ("Although individual facts and incidents, considered separately, might be inconclusive, they 'may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof.'" (quoting *United States v. Lechuga,* 888 F.2d 1472, 1476 (5th Cir.1989) (citations omitted))); *United States v. Martinez,* 975 F.2d 159, 161 (5th Cir.1992) (holding that although individual circumstances on their own might be insufficient, combination of circumstances may be sufficient to support conviction), *cert. denied,* —— U.S. ——, 113 S.Ct. 1346, 122 L.Ed.2d 728 (1993); *Medina,* 887 F.2d at 531 ("Although, when viewed separately, each of the ... circumstances might be considered consistent with innocent behavior, the cumulative effect of all this evidence and the reasonable inferences which may be drawn from it [may] enable a reasonable trier of fact to find [defendant] guilty ....").

We have on occasion considered evidence substantially similar to that supporting Dean and Cofer's convictions. In *Menesses, Espinoza–Seanez, Jackson,* and *Sanchez–Sotelo,* we addressed the sufficiency of the evidence supporting conspiracy convictions of "lookouts". In *Menesses,* the defendant was present and acted "consistent[ly] with that of a countersurveillance vehicle." In *Espinoza–Seanez,* the defendant drove a conspirator to the location of a car containing drugs, had a mobile phone and carried an amount of money sufficient to pay for the drugs. In *Jackson,* the defendant joined conspirators at a

restaurant and "seem[ed] very watchful of the comings and goings in the restaurant, constantly turning his head from left to right." In *Sanchez–Sotelo,* several persons including the defendant "drove around the parking lot in a manner that suggested they were searching for signs of law enforcement personnel."

Only in *Sanchez–Sotelo,* however, did we affirm the conviction. In *Menesses, Espinoza–Seanez,* and *Jackson,* on the other hand, we emphasized that while the evidence before it might support an inference that the defendant was acting as a "lookout," no evidence supported the further inference that the defendant had knowingly agreed to join a drug conspiracy.[14] We concluded that under these circumstances, evidence sufficient to support a reasonable inference that a defendant was knowingly acting as a lookout was insufficient support for the further inference that the defendant knew what he was protecting. In contrast, the government in *Sanchez–Sotelo* provided additional evidence, namely the comments of a conspirator that the defendant was his "business partner" and the defendant's flight from the scene. This evidence therefore supplied the "competing facts," *Espinoza–Seanez,* 862 F.2d at 536, that had been missing from *Menesses, Espinoza–Seanez,* and *Jackson.*

The evidence in the present case clearly establishes that Dean and Cofer associated with Espy, Smith, and Flowers, and supports the inference that their presence at the motel was not coincidental. A police officer testified that he observed Dean and Cofer walk "back and forth" outside the motel room, behavior he described as typical for lookouts, while Espy, Smith, and Flowers were selling drugs inside. Taken in the light most favorable to the verdict, this evidence supports the inference that Dean and Cofer were indeed acting as lookouts.

The relevant question then becomes whether the remaining evidence of Dean and Cofer's involvement adds enough to the equation to support the further inference that they knew that they were conducting countersurveillance for a crack cocaine transaction. Dean and Cofer fled upon hearing gunshots, as did informant Small, and the jury could reasonably have inferred that Dean and Cofer feared being found on the scene if someone came to investigate the gunshots. Taken in the light most favorable to the verdict, Espy was referring to Dean and Cofer when he stated: "Oh that's some of my people." His subsequent statement, "I didn't know what was gonna happen," thus supports the inference that Espy had asked Dean and Cofer along to act as surveillance and protection for the drug deal.[15] More-

---

**14.** In *Menesses,* the court stated that the jury's verdict was "based on inference upon inference," noting that the evidence provided equal support for the defendant's claim that he followed and watched over the rental truck as a favor for a friend who told him that it contained furniture. 962 F.2d at 427. The court stressed that while "the jury could have credited testimony from FBI agents to the effect that the Mustang's behavior was consistent with that of a countersurveillance vehicle," the relevant question was whether the defendant knew the purpose of his surveillance. *Id.* The court in *Menesses* also noted that while police had conducted "a lengthy sting operation," they had not turned up any evidence of the defendant's involvement until the very last day. *Id.*

In *Espinoza–Seanez,* the court similarly found that " '[t]oo many innocent scenarios jibe with the sparse record facts.' " 862 F.2d at 538 (quoting *United States v. Gonzalez,* 703 F.2d 807, 808 (5th Cir.1983)). The court found that: "It is possible, for example, that [the defendant] was driving a friend over to the restaurant at the friend's request so the friend could 'pick up a car,' or for some other purpose." *Id.* The court

noted that the Government must prove a defendant's knowing involvement in a conspiracy beyond a reasonable doubt, not merely that the defendant was "more likely than not" involved. *Id.*

In *Jackson,* the court emphasized that while the defendant sat down at a table with the conspirators and appeared to be "very watchful of the comings and goings in the restaurant," "there is no evidence indicating that [he] knew the nature or purpose of the meeting, or even that a large amount of money was present." 700 F.2d at 185. The court refused to affirm the jury's verdict based on "mere conjecture and suspicion." *Id.* at 186.

**15.** Espy's statement to the informants is distinguishable from the statement that the arrested conspirator made to the DEA in *Espinoza–Seanez.* The arrested conspirator in *Espinoza–Seanez* "told the agents that he was supposed to make a phone call and then leave the [Pontiac containing marijuana] at an El Paso restaurant." *Espinoza–Seanez,* 862 F.2d at 530. "Roughly 40 minutes later, [the defendant] drove into the parking lot

over, Dean and Cofer fled the scene and did not stop to seek assistance. Each of these facts enhances the reasonableness of inferring that Dean and Cofer agreed to act as look-outs outside the motel room while Espy, Smith, and Flowers were inside. Consequently, the cumulative evidence sufficiently supports the jury's conclusion that Dean and Cofer knew what they were protecting when they acted as lookouts.[16] Accordingly, we conclude that a rational jury could have found that the Government proved beyond a reasonable doubt that Dean and Cofer knew of a conspiracy and voluntarily joined it.[17]

2

Flowers contends that "[i]t is very clear from review of the facts in the record that none of the criteria for linking [him] to a conspiracy to distribute crack cocaine exists," and that his actions were "just as consistent

with someone who happened to end up being present in a room where one of his friends made a drug deal as they are with being a part of the conspiracy itself." The Government argues that the jury "could properly have concluded from the evidence that Flowers helped negotiate the transactions, [and] went to the delivery site to provide security for the money and the cocaine base."

Taking the evidence in the light most favorable to the jury's verdict, we know that Flowers was an associate of Espy; that Flowers spoke to informant Small on the telephone, arranging the drug transaction for Espy; that Flowers either met Espy at the motel where Espy was to sell crack cocaine to the informants, or arrived there with Espy; that Flowers was present inside the motel room during the transaction; and that the government found cocaine taped to Flower's ankle.

---

and parked his car several yards from the Pontiac." *Id.* However, "[i]t was [the defendant's] actions rather than any identification of him in [the conspirator's] confession which raised suspicion of his participation in the conspiracy." *Id.* at 534. In the present case, as we have already stated, Espy referred to and therefore identified Dean and Cofer in his statement.

16. Dean and Cofer argue that a rational jury could not convict them beyond a reasonable doubt because the Government failed to prove that they either discussed, saw, or possessed the drugs at some point. We have frequently affirmed convictions of lookouts in cases of this nature. *See, e.g., United States v. Fierro*, 38 F.3d 761, 769 (5th Cir.1994) (lookout possessed drugs in furtherance of conspiracy), *cert. denied,* — U.S. —, 115 S.Ct. 1388, 131 L.Ed.2d 240 (1995); *United States v. Sparks*, 2 F.3d 574, 579 (5th Cir.1993) (lookout sold drugs in furtherance of conspiracy), *cert. denied,* — U.S. —, 114 S.Ct. 720, 126 L.Ed.2d 684 (1994); *United States v. Garcia*, 917 F.2d 1370, 1376 (5th Cir.1990) (co-defendant testified that lookout knew he was guarding truck containing marijuana); *United States v. Arzola–Amaya*, 867 F.2d 1504, 1512 (5th Cir.) (lookout was present in house were drugs were found), *cert. denied,* 493 U.S. 933, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989); *United States v. Kaufman*, 858 F.2d 994, 999 (5th Cir.1988) (lookout possessed drugs in furtherance of conspiracy), *cert. denied,* 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989); *United States v. Erwin*, 793 F.2d 656, 664 (5th Cir.) ("[I]n addition to acting as a look-out, [the defendant] had organizational duties such as recruiting, delivering pills and collecting money from apartments."), *cert. denied,* 479 U.S. 991, 107 S.Ct. 589, 93 L.Ed.2d

590 (1986). The issue, however, is not whether there is *overwhelming* evidence of knowledge, but whether there is *sufficient* evidence of that knowledge. *See United States v. Soto*, 591 F.2d 1091, 1103 (5th Cir.) (upholding lookout's conspiracy conviction in drug case, even though evidence did not show that defendant had ever discussed, seen, or possessed drugs, where defendant had acted as a lookout for "several hours"), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979). Accordingly, we reject Dean and Cofer's argument. *Cf. Espinoza–Seanez,* 862 F.2d at 539 ("[T]he circle into which conspirators must fall should not be so small as to include only those who physically handled the controlled substance ....") (Sneed, J., dissenting).

17. Dean and Cofer also contend that insufficient evidence supports their convictions for possession with intent to distribute crack cocaine. To sustain a defendant's conviction on an aiding-and-abetting charge, the evidence must support beyond a reasonable doubt the inference that the defendant "knew that a drug transaction was occurring, that she associated herself with the actors involved in the transaction, that she participated in the venture with the desire that the venture succeed, and that she perform some designed or intended action to achieve the goal of the crime." *United States v. Jaramillo,* 42 F.3d 920, 923 (5th Cir.1995). Having held that a rational jury could conclude beyond a reasonable doubt that Dean and Cofer knew the nature of the meeting in the motel room, we also hold that a rational jury could have concluded beyond a reasonable doubt that Dean and Cofer aided and abetted the possession with intent to distribute crack cocaine.

The Government's tape recording of the telephone conversation between Flowers and Small alone is sufficient evidence that Flowers knew of the conspiracy and voluntarily joined it. *See United States v. Lopez,* 979 F.2d 1024, 1029 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993) (noting that Government provided evidence that defendant had "expressly negotiated the terms of the drug transaction," and holding that "[t]his alone is clearly sufficient evidence to justify a conviction for conspiracy"); *United States v. Fragoso,* 978 F.2d 896, 902 n. 6 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 1664, 123 L.Ed.2d 282 (1993) (holding that evidence showing that defendant's conversations "included numerous references to cocaine as the subject of the transaction" constituted "more than enough evidence for the jury to infer that [the defendant] had conspired with [another] to possess cocaine with intent to distribute it"); *United States v. Greenwood,* 974 F.2d 1449, 1463 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2354, 124 L.Ed.2d 262 (1993) (holding that evidence showing that defendant arranged a drug transaction over telephone constituted sufficient evidence of conspiracy to possess drugs with intent to distribute). We conclude, therefore, that a rational jury could have convicted Flowers beyond a reasonable doubt.

### B

Smith and Flowers also contend that insufficient evidence supports their convictions for using or carrying a firearm during a drug-trafficking crime, each arguing that he did not carry a gun during the drug transaction and did not know that Espy was carrying one. The Government contends that the evidence, taken in the light most favorable to the jury's verdict, supports the inference that "Smith and Flowers knew prior to the display of the gun that Espy was carrying it."

■■■ Under § 924(c), the Government must prove that the defendant (1) committed the underlying offense, and (2) knowingly used or carried a firearm during and in relation to that crime. *United States v. Speer,* 30 F.3d 605, 612 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 603, 130

L.Ed.2d 514 (1994). " 'Use' does not require the government to prove actual use such as the discharging of or brandishing of the weapon. The government may meet its burden by simply showing that the weapons facilitated, or could have facilitated, the drug trafficking offense." *United States v. Pace,* 10 F.3d 1106, 1117 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2180, 128 L.Ed.2d 899 (1994).

The Government argues that the jury could have concluded beyond a reasonable doubt that Smith and Flowers knew that Espy was carrying a gun before they entered the motel room based on evidence that Espy could not have driven or sat with the gun concealed, due to the size of the gun, and that the gun case was in the trunk of his car. The Government, however, failed to show at trial that Espy arrived at the motel in the same car as either Smith or Flowers. Thus, Espy may have concealed the gun on his person after arriving at the motel, but prior to joining Smith and Flowers.

■■■ The Government contends that: "Even if the jury believed that Smith and Flowers did not know about or agree to the presence of the gun, they could have held them accountable as co-conspirators." Under the rule established by the Supreme Court in *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), " '[a] party to a conspiracy may be held responsible for a substantive offense committed by a coconspirator in furtherance of a conspiracy, even if that party does not participate in or have any knowledge of the substantive offense.' " *United States v. Jensen,* 41 F.3d 946, 955–56 (5th Cir.1994) (quoting *United States v. Garcia,* 917 F.2d 1370, 1377 (5th Cir.1990)). Thus, "*Pinkerton* permit[s] a defendant to be convicted under section 924(c) based on a co-conspirator's possession of a weapon during a drug trafficking crime even if the defendant was unaware of the conspiratory possession." *United States v. Mendoza–Burciaga,* 981 F.2d 192, 198 (5th Cir. 1992) (citing *United States v. Raborn,* 872 F.2d 589, 596 (5th Cir.1989)), *cert. de-*

**1490**

*nied,* —— U.S. ——, 114 S.Ct. 356, 126 L.Ed.2d 320 (1993).[18]

Count 1 of the indictment charged that "James Earl Cofer, George Dean, Kenneth Earl Flowers and Kenneth Dewayne Smith, Defendants, and Fredericke Dion Espy, did knowingly and intentionally combine, conspire, confederate and agree together, and with other persons known and unknown," to possess with the intent to distribute cocaine base. The jury found both Smith and Flowers guilty under Count 1; Smith does not challenge his conspiracy conviction, and we have affirmed Flowers' conspiracy conviction.

Espy was shot during the police raid and died on the scene, and therefore was never convicted of a 924(c) violation. However, a reasonable jury could have concluded that Espy, in furtherance of the conspiracy to possess with the intent to distribute crack cocaine, knowingly used or carried a firearm during and in relation to a drug-trafficking crime. Thus, under *Pinkerton,* Smith and Flowers were properly convicted for violating § 924(c) based on Espy's violation of § 924(c) in furtherance of the conspiracy,[19] even though they may have been unaware that Espy was armed before they accompanied him into the motel room.[20]

18. "However, a substantive conviction cannot be upheld solely under *Pinkerton* unless the jury was given a *Pinkerton* instruction." *United States v. Crain,* 33 F.3d 480, 486 n. 7 (5th Cir.1994) (citing *United States v. Basey,* 816 F.2d 980, 998 (5th Cir.1987)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1142, 130 L.Ed.2d 1102 (1995). "[A]t a minimum, a proper *Pinkerton* instruction should at least state clearly that the defendant can be convicted of a substantive crime committed by his co-conspirator in furtherance of the conspiracy." *Id.* (citing *Basey,* 816 F.2d at 998 & n. 35). The district court did give a *Pinkerton* instruction, in which it told the jury that "a conspiracy is a kind of 'partnership,' so that under the law each member is bound by or responsible for the acts and statements of every other member made in pursuance of their unlawful scheme."

19. In *United States v. Lewis,* 902 F.2d 1176 (5th Cir.1990), we affirmed a defendant's conviction for possession of cocaine without ruling on the question of whether sufficient evidence established that he had ever had actual or constructive possession of the cocaine. We held that: "Having found [the defendant] guilty of conspiring to possess cocaine with intent to distribute, the jury could properly have found [him] guilty of possession under the vicarious liability doctrine of *Pinkerton* ...." *Id.* at 1181. Although all of the defendant's co-conspirators were either unindicted or acquitted on the conspiracy and possession charges, we concluded that: "Since a reasonable jury could have found that one of [the defendant's] coconspirators had possession of the cocaine, the evidence is sufficient to sustain [the defendant's] conviction." *Id.; see also United States v. Nino,* 967 F.2d 1508, 1514 (11th Cir. 1992) ("[T]he rules of co-conspirator liability as explained in *Pinkerton* and the Sentencing Guidelines do not require that the firearm possessor be a *charged* co-conspirator when that co-conspirator dies or is otherwise unavailable for indictment."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1432, 122 L.Ed.2d 799 (1993).

20. For a defendant to be found guilty under *Pinkerton* for an offense committed by a co-con-

spirator, the offense must also have been reasonably foreseeable to the defendant. *United States v. Maceo,* 947 F.2d 1191, 1198 (5th Cir.1991), *cert. denied,* 503 U.S. 949, 112 S.Ct. 1510, 117 L.Ed.2d 647 (1992). We have observed repeatedly that firearms are the tools of the trade of those engaged in illegal drug activity. *United States v. Aguilera–Zapata,* 901 F.2d 1209, 1215 (5th Cir.1990). In *United States v. Elwood,* 993 F.2d 1146 (5th Cir.1993), we held that the it was foreseeable for the purposes of *Pinkerton* that a defendant's co-conspirators would carry firearms during a drug transaction because a substantial quantity of drugs, 2027 grams of cocaine, was involved. *Id.* at 1148, 1151. Other circuits have also emphasized a connection between the amount of drugs involved in a transaction, and hence the amount of money, and the foreseeability for *Pinkerton* purposes of a co-conspirator's using a weapon during the transaction. *See, e.g., United States v. Edwards,* 36 F.3d 639, 644 (7th Cir.1994) (stating that "[w]e have held that the inherently violent nature of the drug trade makes the presence of firearms in large transactions reasonably foreseeable," and offering as examples of such large transactions a $39,000 and a $60,000 deal); *United States v. Williams,* 31 F.3d 522, 526 (7th Cir.1994) (stating that "[b]ecause the drug industry is, by nature, a violent business, the presence of firearms in transactions involving sizeable quantities of drugs is reasonably foreseeable," and offering as examples a $39,000 and a $60,000 deal); *United States v. Odom,* 13 F.3d 949, 959 (6th Cir.) ("The nexus between drugs and firearms has been acknowledged when large quantities of cocaine are involved in a conspiracy."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1859, 128 L.Ed.2d 481 (1994); *United States v. Martinez,* 958 F.2d 217, 219 (8th Cir.1992) ("Certainly, it was reasonably foreseeable that one of [the defendant's] co-conspirators might carry a weapon in a transaction involving $9,600 worth of cocaine."); *United States v. Cummings,* 937 F.2d 941, 945 (4th Cir.) ("When an individual conspires to take part in a street transaction involving a kilogram of cocaine worth $39,000, it certainly is quite reasonable to

### III

■ Smith and Flowers next argue that there was a material variance between the indictment's identification of the weapon used in the drug trafficking offense and the Government's identification of the weapon at trial. The indictment identified the weapon as "an Intratech semi-automatic pistol, Model DC9, .9 millimeter, serial number DO23800." At trial, the Government identified the gun once as an "Intratech 9," and later as "an Intratech 9, 9 millimeter, semi-automatic pistol." The Government contends that its referring to a .9 millimeter gun as a 9 millimeter gun did not harm Smith and Flowers in any way.

■ "A material variance occurs when a variation between proof and indictment occurs, but does not modify an essential element of the offense charged." *United States v. Thomas,* 12 F.3d 1350, 1357 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1861, 128 L.Ed.2d 483 (1994). In determining whether a material variance resulted in prejudice, we employ a harmless error analysis. *Id.* at 1357; *United States v. Lokey,* 945 F.2d 825, 832 (5th Cir.1991). Thus, to obtain a reversal based on the alleged variance, Smith and Flowers must show that the variance affected their substantial rights. *Thomas,* 12 F.3d at 1358. "The concerns underlying our cases on variance are to ensure that the indictment notifies a defendant adequately to permit him to prepare his defense, and does not leave the defendant vulnerable to a later prosecu-

tion because of failure to define the offense with particularity." *United States v. Hernandez,* 962 F.2d 1152, 1159 (5th Cir.1992).

Neither Smith nor Flowers alleges that the indictment either failed to provide him with sufficient notice to prepare his defense or would leave him vulnerable to a later prosecution. In fact, neither shows how the variance between the identifications of the gun affected his substantial rights in any way.[21] We conclude, therefore, that any error in the Government's identification of the gun at trial was harmless.

### IV

■ Smith contends that the district court erred in overruling his objections to the Government's attorneys' and witnesses' referring to him by his nickname or alias, "Crazy K," in front of the jury. Before trial, the district court denied Smith's motion in limine to suppress evidence of his nickname. "We review the district court's determination that this [alias] evidence was more probative that prejudicial for an abuse of discretion." *United States v. Stowell,* 947 F.2d 1251, 1255 (5th Cir.1991), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1269, 117 L.Ed.2d 497 (1992).

During trial, Jackie Small and Calvin Thomas, the government informants, both referred to Smith as "Crazy K" in their testimony; Flowers' attorney used Smith's nickname when questioning Small; and the Government attorney used Smith's nickname when questioning Thomas.[22] The Govern-

---

assume that a weapon of some kind would be carried."), *cert. denied,* 502 U.S. 948, 112 S.Ct. 395, 116 L.Ed.2d 345 (1991). We do not go as far as to presume that the presence of a weapon in a drug transaction is always foreseeable. *See United States v. Castaneda,* 9 F.3d 761, 766 (9th Cir.1993) ("Although courts recognize the nexus between drugs and firearms, there is no presumption of foreseeability, and the burden of foreseeability remains on the government."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1564, 128 L.Ed.2d 210 (1994). However, Smith and Flowers were involved in a $5,000 transaction, and thus a rational jury could have concluded beyond a reasonable doubt that it was foreseeable to them that Espy would be carrying a gun.

21. Smith and Flowers do allege that the erroneous descriptions of the gun confused the jury and made the jury believe that Espy was carrying a

much more powerful gun than that described in the indictment. The gun was identified in the indictment as bearing the serial number "DO23800," however, and after the gun was introduced into evidence, a witness for the prosecution read the serial number aloud as "DO23800." The jury charge identified the gun by the same serial number. Thus, the jury was aware that the gun entered into evidence at the trial was the same gun mentioned in both the indictment and the jury charge.

22. Jackie Small, one of two government informants that had arranged to buy crack cocaine from Fred Espy in a hotel room, testified that she had met "Ken and Crazy K" before the drug transaction. The Government attorney responded by asking Small: "Can you tell me, do you see Crazy K in the courtroom today?" Small indicated Smith. Small stated that "Ken and Crazy

ment contends that allowing the informants to use Kenneth Smith's nickname was necessary to ensure accurate identification because Small and Thomas knew Smith only by his nickname and knew Flowers as "Ken." The Government further argues that the references were limited, and that the name "Crazy K" is not suggestive of a criminal disposition.

While we have held that the use of a defendant's nickname in an indictment is appropriate if a codefendant once knew the defendant by that name, *see United States v. Taylor*, 554 F.2d 200, 203 (5th Cir.1977), we have yet to address the use of a defendant's nickname in the presentation of evidence to the jury. Those circuits that have addressed this issue have held that such use of a defendant's nickname is appropriate if a witness once knew the defendant by the nickname.[23] Small and Thomas knew Smith as "Crazy K," and the attorneys' references to Smith as "Crazy K" were limited to their questioning of these two witnesses. The witnesses' and attorneys' use of Smith's nickname aided them in their identification of Smith and helped them to distinguish between Smith and Flowers, who share the first name "Kenneth." Furthermore, as the Government notes, the nickname "Crazy K" is not necessarily suggestive of a criminal disposition. For these reasons, we hold that the district court did not err or abuse its discretion in overruling Smith's objections to the Government's attorneys' and witnesses' referring to him as "Crazy K."

## V

■ Dean, Cofer, and Flowers further contend that the district court abused its discretion in refusing to allow into evidence, under Rule 804(b)(3) of the Federal Rules of Evidence, Smith's statement during plea negotiations that Dean, Cofer, and Flowers had not known of the proposed drug exchange at the time Smith, Flowers, and Espy entered the motel room. Smith claimed during negotiations that only he and Espy had known anything about the drug deal. At trial, however, Smith objected to the introduction of these statements.

■ Rule 804(b)(3) of the Federal Rules of Evidence creates a limited exception to the hearsay rule for statements against the declarant's penal interest. To be admissible under Rule 804(b)(3), such a declaration must meet the following three-part test:

"(1) The declarant must be unavailable; (2) The statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) The statement must be corroborated by circumstances clearly indicating its trustworthiness."

*United States v. Flores*, 985 F.2d 770, 774 n. 10 (5th Cir.1993) (quoting *United States v. Sarmiento–Perez*, 633 F.2d 1092, 1101 (5th Cir.1981), *cert. denied*, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 75 (1982)). We will uphold the district court's determination as to the trustworthiness of an out-of-court statement unless it is clearly erroneous.

K, the other Kenneth" entered the room with Fred Espy, and later that: "Crazy K had pulled out the stuff after he looked around, and then they told me to go get the money, and I left out." At another point, Flowers' attorney asked Small: "As a matter of fact, you didn't know that Crazy K as you have referenced is, in fact, Kenneth Smith?" Small responded that she did not. Calvin Thomas, the other government informant, testified that "a guy named Crazy K" had delivered the crack cocaine to the hotel room. He later stated that "Crazy K brought the stuff out," and the Government's attorney asked him: "What happened after Crazy K brought the stuff out?"

**23.** *See United States v. Smith*, 918 F.2d 1501, 1511 (11th Cir.1990) (holding that where those

within the "society" of the conspiracy knew defendant as "Boss" and "Boss Man," "[t]here was no error in the revelation of this fact nor in references to him by witnesses who knew him only by these monikers"), *cert. denied*, 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991); *United States v. Hattaway*, 740 F.2d 1419, 1425 (7th Cir.) (finding that forbidding witness to refer to defendants' nicknames would be unduly burdensome where defendants used nicknames to identify themselves in witness' presence), *cert. denied*, 469 U.S. 1028, 105 S.Ct. 448, 83 L.Ed.2d 373 (1984); *United States v. Jorge–Salon*, 734 F.2d 789, 791–92 (11th Cir.) ("The use of an alias in an indictment and in evidence is permissible if it is necessary to connect the defendants with the acts charged."), *cert. denied*, 469 U.S. 869, 105 S.Ct. 215, 83 L.Ed.2d 145 (1984).

*United States v. Briscoe,* 742 F.2d 842, 846–47 (5th Cir.1984).

What a court may or must consider in determining the trustworthiness of a statement for the purposes of Rule 804(b)(3) is governed in part by the Supreme Court's ruling in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). In *Wright,* the Court held that unless a hearsay statement is admissible under a "firmly rooted" hearsay exception, and thus presumed to be reliable, the Confrontation Clause of the Sixth Amendment requires that the party seeking to admit the statement provide "particularized guarantees of trustworthiness" to the court. *Flores,* 985 F.2d at 775. In *Flores,* we noted that: "Although some statements that fall within the declaration-against-penal-interest concept may be inherently reliable, the concept itself 'defines too large a class for meaningful Confrontation Clause analysis.'" *Id.* at 775–76 (quoting *Lee v. Illinois,* 476 U.S. 530, 544 n. 5, 106 S.Ct. 2056, 2064 n. 5, 90 L.Ed.2d 514 (1986)). We held in *Flores* that "a confession by an accomplice inculpating a defendant that is being offered as a declaration against penal interest is not a firmly rooted exception" to the hearsay rule, and thus not inherently reliable. *Id.* at 775.

In *Flores,* we did not consider whether a statement by an accomplice *exculpating* a defendant falls under a firmly rooted exception to the hearsay rule.[24] However, in *United States v. Sarmiento–Perez,* 633 F.2d 1092 (5th Cir. Unit A Jan. 1981), we stated that "a clear distinction must be drawn between statements against penal interest that are offered to exculpate a criminal defendant, as against those that are offered to inculpate

him." *Id.* at 1100. We continued: "The admission under Rule 804(b)(3) of against-interest-of-declarant hearsay statements that inculpate a criminal defendant results in the diminution of rights traditionally viewed as essential and fundamental components of an accused person's right of confrontation." *Id.; accord United States v. Costa,* 31 F.3d 1073, 1078 (11th Cir.1994) (stating that "inculpatory statements implicate the confrontation rights of the accused whereas exculpatory statements do not").

Because the admissibility of Smith's statement did not implicate his confrontation rights, or those of any other defendant, the district court properly considered any corroborating circumstance that clearly indicated that the statement was trustworthy. In their briefs on appeal, Flowers and Cofer claim that the evidence of Smith's guilt is sufficient corroboration, and cite no evidence corroborating Smith's statement that Flowers, Dean, and Cofer knew nothing of the transaction. Given the circumstances of this case, however, Smith's guilt does not preclude the other defendants' involvement, and therefore does not sufficiently corroborate Smith's exculpatory statement. The evidence that Flowers knowingly conspired with Smith and Espy to possess and distribute the crack cocaine is strong. In addition, Smith made many questionable claims during his plea negotiations. Smith claimed that he had never seen crack cocaine before the transaction, that he had not known what crack cocaine was until that time, that he was not the person who returned the telephone call that Small made to Espy,[25] and that Dean and

---

24. In *Flores,* we concluded that a First Circuit case and a Second Circuit case, each holding that the declaration-against-penal-interest exception is a "firmly rooted" exception to the hearsay rule, could not be viewed as authoritative because they were decided before *Lee.* Since we decided *Flores,* many courts have held that Rule 804(b)(3) is a firmly rooted exception to the hearsay rule. *See, e.g., United States v. Innamorati,* 996 F.2d 456, 474 n. 4 (1st Cir.) ("Most courts have concluded that the declaration against interest exception embodied in Fed. R.Evid. 804(b)(3) is a 'firmly rooted' exception to the hearsay rule."), *cert. denied,* —— U.S. ——, 114 S.Ct. 409, 126 L.Ed.2d 356 (1993); *Jennings*

*v. Maynard,* 946 F.2d 1502, 1505 (10th Cir.1991) (referring to statement-against-penal-interest exception as "firmly rooted hearsay exception"); *United States v. York,* 933 F.2d 1343, 1363–64 & n. 5 (7th Cir.), *cert. denied,* 502 U.S. 916, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991) (describing exception as "firmly established" and holding that admissibility under Rule 804(b)(3) satisfies Confrontation Clause).

25. Later, Smith recanted his statements about his unfamiliarity with crack cocaine and the telephone conversation with Small.

Cofer never got out of their vehicle throughout the drug transaction.[26]

When Smith's attorney objected to the introduction of Smith's statement as to Dean, Cofer, and Flowers' lack of involvement in the transaction, the district court responded that "the Court does not find that the corroborating circumstances clearly indicate the trustworthiness of the statement, and in fact the Court finds to the contrary, and I will exclude the statement." Given the evidence of Dean, Cofer, and Flowers' involvement in the conspiracy and the questionable nature of the other statements Smith made during his plea negotiations, the district court's determination was not clearly erroneous.

## VI

■■■ Dean, Cofer, Smith, and Flowers each challenge the district court's sentence. We review the factual findings made by the district court at the sentencing hearing for clear error. *United States v. Mimms*, 43 F.3d 217, 220 (5th Cir.1995). If the defendant failed to object below to the factual findings, we will only review for plain error. *United States v. Guerrero*, 5 F.3d 868, 871 (5th Cir.1993). We review the district court's application of the sentencing guidelines de novo. *United States v. Anderson*, 987 F.2d 251, 257 (5th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 157, 126 L.Ed.2d 118 (1993).

■■■ The district court enhanced Dean and Cofer's sentences on the grounds that they possessed a dangerous weapon in furtherance of the conspiracy. *See* United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(b)(1) (Nov.1994) (providing for sentence enhancement for possession of dangerous weapon during drug offenses). Dean and Cofer argue on appeal that Espy's possession of a gun during the drug transaction was not reasonably foreseeable to them, nor within the scope of their agreement to join the conspiracy, and thus not attributable to them under section 1B1.3 of the Sentencing Guidelines. *See* U.S.S.G. § 1B1.3 (providing that defendant may be held accountable at sentencing for reasonably foreseeable conduct of others in furtherance of the jointly

undertaken criminal activity). "When a defendant objects to particular findings in the presentence report, the sentencing court must resolve the specifically disputed issues of fact if intends to use those facts as a basis for its sentence." *United States v. Smith,* 13 F.3d 860, 867 (5th Cir.) (citing *United States v. Rodriguez,* 897 F.2d 1324, 1327 (5th Cir.), *cert. denied,* 498 U.S. 857, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990)), *cert. denied,* — U.S. ——, 114 S.Ct. 2151, 128 L.Ed.2d 877 (1994). Because neither Dean nor Cofer objected at sentencing on the grounds that Espy's possession of a gun during the drug transaction was not reasonably foreseeable to them, or that it was not within the scope of their jointly undertaken criminal activity, we accordingly see no plain error in the district court's finding. *See United States v. Guerrero,* 5 F.3d 868, 871 (5th Cir.1993) ("Questions of fact 'capable of resolution by the district court upon proper objection at sentencing can never constitute plain error.'" (quoting *United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.1991), *cert. denied,* 500 U.S. 924, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991))), *cert. denied,* — U.S. ——, 114 S.Ct. 1111, 127 L.Ed.2d 422 (1994).

■■■ Dean, Cofer, Smith, and Flowers also argue that the district court erroneously found that the total amount of crack cocaine that the police found in the motel room and on Smith, Flowers, and Espy weighed over 150 grams, and that the error resulted in an inaccurate sentencing calculation under the Sentencing Guidelines. Relying on the results of tests conducted by an independent chemist, they contend that the weight of the drugs seized by the police was 143.683 grams rather than 154.32 grams, the weight given by the government chemist. "Information used in sentencing must have some indicia of reliability." *United States v. Kinder,* 946 F.2d 362, 366 (5th Cir.1991), *cert. denied,* 503 U.S. 987, 112 S.Ct. 1677, 118 L.Ed.2d 394 (1992). However, "[t]he district court has wide discretion in evaluating the reliability of the information and whether to consider it." *Id.* The independent chemist weighed the

---

26. In his brief on appeal, Dean does cite evidence of his own lack of involvement as corroboration of Smith's statement. In light of the circumstances surrounding Smith's statement, however, this evidence is insufficient to establish its trustworthiness.

crack cocaine at least a month after the government chemist's tests, and the district court attributed the different results to loss during the testing process. Given the evidence supporting the reliability of the government chemist's report,[27] the district court's conclusion was not clearly erroneous.[28]

■ Smith and Cofer argue that the district court erroneously concluded that Espy's possession of 24.5 grams of crack cocaine in his pants and underwear, and Flowers' possession of .82 grams of crack cocaine in his sock,[29] constituted "relevant conduct" attributable to them. Flowers makes the same argument with regard to the drugs found in Espy's possession and the 5.3 grams of crack cocaine found in Smith's underwear; and Dean with respect to the drugs found in Espy's possession, the 5.3 grams of crack cocaine found on Smith, and the .82 grams of crack cocaine found on Flowers. Under section 1B1.3 of the Sentencing Guidelines, "the defendant is responsible for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3(a)(1)(B) (1994). The commentary to section 1B1.3 explains that "a defendant is accountable for the conduct (acts and omissions) of others that was both: (i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." *Id.* cmt. 2.

The district court found that the total amount of cocaine present during the transaction was reasonably foreseeable to Dean, Cofer, Smith, and Flowers, stating that "each of the defendants reasonably should have known that the amounts [of crack cocaine] found [in the motel room and on Espy,

Smith, and Flowers] were involved in the transaction and would be attributable to them." However, the court's finding of foreseeability is irrelevant without concurrent findings that Dean, Cofer, Smith, and Flowers each agreed to a jointly undertaken criminal activity with his co-conspirators involving the additional amounts of crack cocaine, and that the conspirators were carrying the additional amounts in furtherance of such an agreement. *See United States v. Evbuomwan*, 992 F.2d 70, 74 (5th Cir.1993) (holding that foreseeability of codefendants' conduct was irrelevant absent concurrent findings that defendant agreed to jointly undertake criminal activity with codefendants and that codefendants' conduct was in furtherance of that agreement).

In *United States v. Smith*, 13 F.3d 860 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2151, 128 L.Ed.2d 877 (1994), we reversed a defendant's sentence because the district court failed to expressly find that the defendant had agreed to jointly undertake criminal activity involving additional amounts of crack cocaine. The defendant in *Smith* was convicted of conspiring with one of his three codefendants to possess with the intent to distribute crack cocaine, but he was sentenced based on both the amount of crack cocaine that he and his co-conspirator sold to an undercover agent and additional amounts that police found on the floor of the house where the drug transaction had taken place. We held that:

> Before the trial court in this case could sentence [the defendant] based on the additional cocaine, it must have made specific findings, supported by a preponderance of the evidence, that [the defendant] agreed to a jointly undertaken criminal activity with [his co-conspirator] *and* [either of the other defendants] involving the greater

27. The government chemist testified at the sentencing hearing, describing his professional qualifications and the accuracy of his testing procedure.

28. *See United States v. Tucker*, 20 F.3d 242, 243 (7th Cir.1994) (attributing weight loss in crack cocaine sample to evaporation); *United States v. Thomas*, 11 F.3d 620, 631–32 (6th Cir.1993) (affirming district court's reliance on government

chemist's weighing of crack cocaine rather than independent weighing where differing results were attributable to loss from testing and evaporation), *cert. denied*, —— U.S. ——, 114 S.Ct. 1570, 128 L.Ed.2d 214 (1994).

29. The crack cocaine found in Flowers' sock was wrapped differently than that placed on the bed, and was of a different purity.

amount of cocaine, and that [the defendant] could have reasonably foreseen the amount of cocaine that would be involved in such an undertaking.

*Id.* at 867. The court held that absent a finding that the defendant agreed to a "jointly undertaken criminal activity" with his co-conspirator and at least one of their codefendants that involved the greater amount of crack cocaine, "it is irrelevant whether [the defendant] knew or foresaw that greater amounts of cocaine were in the house." *Id.* Based on our holdings in *Evbuomwan* and *Smith,* we must therefore vacate Dean, Cofer, Smith, and Flowers' sentences and remand to the district court for specific findings as to whether any of the conspirators' agreements involved more than five ounces of crack cocaine, and whether Espy, Smith, and Flowers were carrying additional amounts of crack cocaine in furtherance of such agreements.

 Lastly, Smith argues that the district court erred in failing to consider at sentencing his acceptance of responsibility for his conduct.[30] Under section 3E1.1(a) of the Sentencing Guidelines, however, such consideration is due only if a defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). As the district court stated, Smith "has not accepted responsibility for his full involvement in the offense, and particularly since he has denied any conspiracy, was also denying any involvement with the amount of drugs involving the other conspirators." Smith's conduct has not clearly demonstrated acceptance of responsibility for his offense. *See United States v. Brown,* 49 F.3d 135 (5th Cir.1995) (holding that defendant was "not eligible" for consideration under section 3E1.1 because she "denied her guilt and forced the government to go to trial"); U.S.S.G. § 3E1.1 cmt. 1(a) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent

with acceptance of responsibility ...."). Thus, the district court's decision not to credit Smith with having accepted responsibility for his offense for sentencing purposes was not clearly erroneous.

## VII

For the foregoing reasons, we AFFIRM George Dean, James Earl Cofer, Kenneth Dewayne Smith, and Kenneth Earl Flowers' convictions, VACATE their sentences, and REMAND to the district court for resentencing in accordance with this opinion.

---

30. Smith also claims that the district court abused its discretion in refusing to grant him a downward departure based on his being seventeen at the time he was convicted of an offense that the district court used to enhance his sentence. We do not review such denials for abuse of discretion. We review the district court's refusal to depart from the guidelines only if the denial was a violation of the law. *Navarrete v. United States Parole Comm'n,* 34 F.3d 316, 319 (5th Cir.1994). Smith makes no such argument.