**UNITED STATES of America, Appellee,**

v.

**Charles Alexander MURRAY, also known as Choppy, Appellant.**

No. 95–1031.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1995.

Decided Oct. 11, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 21, 1995.

of powdered and crack cocaine found in the safe produced a substantial increase in his base offense level and sentencing range; and 2) the record does not support the district court's finding that the narcotics found in the safe were reasonably foreseeable amounts and types of narcotics in connection with the criminal activity that Murray jointly undertook with his co-defendants. We affirm.

## I. BACKGROUND

In December 1993, Joseph Walker ("Walker") sold cocaine to Officer Klund, who was working undercover. On January 26, 1994, Walker again sold cocaine to Officer Klund and three confidential informants. Walker was subsequently arrested by the Minneapolis Police Department and agreed to cooperate with the police by disclosing his drug sources. Walker indicated that his source for the cocaine was an individual by the name of Foster Walton ("Walton") and that he had received the cocaine from Walton at Walton's house approximately three hours before his arrest.

In the course of his cooperation, Walker called Walton and asked Walton to sell him two ounces of cocaine. Since Walton was traveling to Duluth, he instructed Walker to call a man named "Choppy" (Charles Murray) and provided Walker with a telephone number.

With officers monitoring the line, Walker called Murray and requested two ounces of cocaine. Murray agreed to meet Walker at 37th and Chicago Avenue South in Minneapolis. However, when Murray did not appear at this location Walker again called Murray from an officer's car phone. Murray stated that he was waiting for Walker at 38th and Portland. Police officers immediately proceeded to that location where they arrested Murray and found a film container filled with approximately two ounces of cocaine lying approximately three feet from the driver's door. The officers also seized a set of keys from Murray.

Daniel C. Guerrero, Minneapolis, Minnesota, argued, for appellant.

Denise Ducharme Reilly, Minneapolis, Minnesota, argued (David Schach as Legal Intern and David L. Lillehaug as United States Attorney, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, LOKEN, Circuit Judge, and VAN SICKLE,* Senior District Judge.

VAN SICKLE, Senior District Judge.

Charles Alexander Murray was indicted on charges of conspiring to distribute cocaine and cocaine base, aiding and abetting the possession of cocaine and cocaine base with intent to distribute, and possessing cocaine with intent to distribute. Murray ultimately pleaded guilty to possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). At sentencing, he was held accountable for 1,578 grams of cocaine and 542 grams of cocaine base discovered in a safe located in an apartment to which Murray had keys. Murray appeals arguing: 1) a heightened standard of proof should have been required at sentencing, because the quantity

---

* The HONORABLE BRUCE M. VAN SICKLE, Senior United States District Judge for the District of North Dakota, sitting by designation.

In the car with Murray at the time of his arrest was Leslie Shirley ("Shirley"). After Murray's arrest, Shirley led them to an apartment building, located at 3726–3728 15th Avenue South in Minneapolis, where she and Murray had stopped prior to the arrest. The keys seized from Murray fitted the security door and the door to Apartment No. 2 in this apartment complex. When the officers knocked on the door of Apartment No. 2., Glen McGhee ("McGhee") let the officers inside. McGhee acknowledged that he knew Choppy. McGhee then gave his consent to the police to search and remove items from the premises. The police seized, among other things, a safe that had been bolted to the floor in the bedroom closet and a digital scale which had traces of cocaine powder on it. Inside the safe were approximately 1,578 grams of cocaine, some of which were contained within 21 individual baggies. Also found in the safe were 23 baggies of cocaine base totaling 542 grams. When questioned by the police regarding the ownership of the safe, McGhee stated that Murray had placed the safe in the apartment. McGhee further stated that Murray told McGhee that he didn't need to know about the safe and didn't need to know what was in it. However, McGhee later recanted this statement.[1]

Murray entered a plea of guilty to one count of distributing 54.3 grams of cocaine (count V of the indictment). The government agreed to dismiss the conspiracy and aiding and abetting counts at sentencing. The parties agreed that the base offense level was no less than 16 and no more than 36. They disagreed as to whether the cocaine found in the safe should be attributed to Murray as relevant conduct and left the final determination of the base offense level to the Court.

The Presentence Report (PSR) calculated Murray's offense level based on the 54.3 grams of cocaine hydrochloride found in Murray's possession at the time of his arrest plus the 1,578 grams of cocaine hydrochloride and 542 grams of cocaine base contained in the safe. The probation officer concluded that the cocaine and cocaine base found in the safe were attributable to him as relevant conduct under U.S.S.G. § 1B1.3 which established a base offense level of 36 under U.S.S.G. § 2D1.1(c)(4).

In reaching this base offense level (36), the PSR determined that Murray knowingly aided and abetted Walton in the distribution of the narcotics which were apparently connected to the seized safe. This determination was based on the fact that Murray possessed a key to the apartment, he visited the apartment just prior to the drug transaction, and the occupant of the apartment identified Murray as the individual who placed the safe there.

After deducting two levels for his role in the offense and three levels for acceptance of responsibility, the PSR set Murray's total offense level at 31, his criminal history category at IV, and his sentencing range at 151 to 188 months.

Murray filed objections to paragraphs 22 and 23 of the PSR, the evaluation of his relevant conduct which set his base level at 36. Murray argued that he should not be held accountable for the narcotics discovered within the safe. In the alternative, he argued that if he was accountable for the narcotics in the safe, it should be limited to the cocaine powder. Murray also argued that his limited role in the illegal activity entitled him to a three level reduction rather than a two level reduction under U.S.S.G. § 3B1.2(b).

Murray requested and received an evidentiary hearing to determine unresolved sentencing issues. Murray testified at the hearing that he made two drug deliveries in a three week period in November and December of 1993, and one more on January 26, 1994, and Murray denied any involvement with the safe. Murray testified that McGhee told him that Walton put the safe in the apartment, that he did not have anything to do with placing drugs in the safe, and that he

---

1. On December 19, 1994, McGhee executed an affidavit recanting prior statements he made to police officers regarding Murray's connection to the safe. In this affidavit McGhee maintains that these statements were false, and at the time he provided these statements to the officers he was "frightened and strung out on heroine."

never knew that drugs were in the safe.[2] Murray repeatedly denied that he had any agreement with Walton regarding drugs or money.

The district court denied both of Murray's objections. At the conclusion of the hearing the court found the following:

[T]he narcotics found in the safe were reasonably foreseeable amounts and types of narcotics in connection with the criminal activity that the Defendant jointly undertook with his co-Defendants.

The Defendant possessed the key to the apartment, visited the apartment prior to the offense of conviction, and was identified as the individual who placed the safe in the apartment.

The facts therefore support holding the Defendant accountable for the narcotics in the safe.

The court also found that Murray was entitled to a two level reduction for his role in the offense. Based on these findings, the district court found that the total offense level to be 31 points, criminal history category of IV, yielding a guideline range 151 to 188 months of imprisonment. The court then sentenced Murray for a period of 151 months. This appeal followed.

## II. DISCUSSION

### A. Sentencing: Standard of Proof

Murray argues that the district court misapplied the relevant conduct provisions of the Sentencing Guidelines by failing to articulate the standard of proof it used to determine the quantity of drugs attributable to him; a determination which, Murray argues, dramatically and unfairly increased his sentence.

U.S.S.G. § 1B1.3(a)(1) defines relevant conduct (Factors that Determine the Guideline Range) as:

(A) all acts and omissions committed, aided, abetted, counseled, commanded, in-

duced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

■ Without mandating a particular standard of proof for factual determinations at sentencing hearings, the Guidelines state that "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). Accordingly, when sentencing a defendant a court may enhance a defendant's sentence by considering quantities of drugs for which the defendant was neither indicted nor convicted, or for which the count was dismissed pursuant to a plea agreement. *United States v. Wayne*, 903 F.2d 1188, 1197 (8th Cir.1990).

As to the standard of proof, Murray concedes that the government is ordinarily required to prove the factual prerequisites to a sentence enhancement by a preponderance of the evidence. *United States v. Pugh*, 25 F.3d 669, 676 (1994) (citations omitted). He correctly points out, however, that "due process conceivably could require more than a mere preponderance" standard where "a sentence enhancement factor becomes 'a tail which wags the dog of the substantive offense.'" *United States v. Townley*, 929 F.2d 365, 369 (8th Cir.1991) (quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88, 106 S.Ct. 2411, 2417–18, 91 L.Ed.2d 67 (1986)).[3] He

---

**2.** The Appellee maintains that this testimony is contradictory to Murray's statements made to the probation officer which are contained in paragraphs 16–19 of the Presentence Report. Paragraph 18 indicates that Murray admitted to the

probation officer that he knew the safe was at the location and knew drugs were typically kept in it.

**3.** In *McMillan*, 477 U.S. at 83–84, 106 S.Ct. at 2414–15, it was noted that the Commonwealth's interest in deterring criminal acts dangerous to

argues that this is such a case because the quantity of powdered and crack cocaine found in the safe increased his base level from 16 to 36 and resulted in a nine-fold increase in his permissible sentencing range.

■ We reject his challenge after consideration of the totality of the evidence. Assuming, without deciding, that this case is one in which the relevant conduct attributable to the Murray became the "tail which [wagged] the dog of the substantive offense," *McMillan*, 477 U.S. at 88, 106 S.Ct. at 2417, had the district court applied the clear and convincing evidence standard of proof,[4] it still would have satisfied any challenge by Murray to the sentencing enhancement resulting from the application of the relevant conduct provisions of the Guidelines. *See United States v. Matthews*, 29 F.3d 462, 464 (8th Cir.1994).

**B. District Court's Factual Determinations**

■ Review of the factual determinations upon which a sentencing court bases its sentence is subject to the clearly erroneous standard. *United States v. Phillippi*, 911 F.2d 149, 152 (8th Cir.1990). The court found that:

> [T]he narcotics found in the safe were reasonably foreseeable amounts and types of narcotics in connection with the criminal activity that the Defendant jointly undertook with his co-Defendants.

■ The district court based its finding on the following facts: (1) Murray possessed the key to the apartment; (2) he visited the apartment prior to the offense of conviction; and (3) he was identified, by McGhee, as the individual who placed the safe in the apartment. Murray argues that the first two factors are wholly inadequate to sustain the district court's conclusion; and the third factor, McGhee's statement to the police, is inherently unreliable and was specifically contradicted by his affidavit introduced at

trial. We disagree. These facts focus on Murray's individual knowledge and participation in the sale of larger quantities of drugs and the contents of the safe; and Murray's conduct led the investigators to the safe. These facts, even under the clear and convincing evidence standard, are sufficient to support the district court's findings. The narcotics found in the safe were reasonably foreseeable amounts and types of narcotics in connection with the criminal activity that Murray jointly undertook with his co-defendants. Thus, we are satisfied that the district court's findings were not clearly erroneous.

Accordingly, the district court's sentencing of Defendant, Charles Alexander Murray is affirmed.

---

others, and in certain punishment for those who commit criminal acts dangerous to others, is as compelling as a convicted defendant's countervailing liberty interest, which has been substantially diminished by that conviction.

4. It should be noted that the district court did not articulate the standard of proof it used to determine the quantity of drugs attributable to Murray.