UNITED STATES of America, Appellee

v.

Vielka DUDLEY, a/k/a Vielka Dudley–Maynard, a/k/a Vielka Davis, Appellant.

UNITED STATES of America, Appellee

v.

Antonio SCOTT, a/k/a Tony Anderson, a/k/a Tony, Appellant.

Nos. 95–3134 and 95–3135.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1996.

Decided Jan. 14, 1997.

Mary E. Davis argued the cause for appellant Vielka Dudley in No. 95–3134. Thomas Abbenante, appointed by the court, was on brief.

Richard S. Stern, appointed by the court, argued the cause for appellant Antonio Scott in No. 95–3135.

Elizabeth Trosman, Assistant United States Attorney, argued the cause for the appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, William J. O'Malley, Jr. and Anna F. Matheson, Assistant United States Attorneys, were on brief.

Before EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellants Vielka Dudley (Dudley) and Antonio Scott (Scott) appeal their respective sentences based on their convictions as co-conspirators in a cocaine distribution ring run by Marcos Anderson (Anderson).[1] *See United States v. Anderson,* 39 F.3d 331, 352 (D.C.Cir.1994), *vacated in part on other ground,* 59 F.3d 1323 (D.C.Cir.) (*en banc*), *cert. denied,* — U.S. —, 116 S.Ct. 542, 133 L.Ed.2d 445 (1995). Dudley and her boyfriend, Gabriel Davis (Davis), supplied cocaine to Anderson. Scott, Anderson's son, operated a cocaine distribution center in Landover, Maryland and acted as one of Anderson's lieutenants. Both argue that there was insufficient evidence, and the district court did not make adequately specific factual findings, regarding the amounts of cocaine for which they were held responsible. We disagree—in each case there is strong evidence of their responsibility for the contested amounts and the district court's findings adequately outline that evidence. We therefore affirm Dudley's and Scott's sentences.

## I. FACTS

Dudley and Davis were cocaine suppliers in the drug distribution ring run by Anderson. They lived in a house in Mitchellville, Maryland and also maintained an apartment at 6101 16th Street, N.W. in Washington. Dudley signed the lease for the apartment, Dudley Resentencing Tr. 19, paid the rent, *id.* at 25, placed at least one drug-related call from there, *id.* at 28, kept documents including personal bills there, *id.*

at 13, 19, purchased the entertainment system found there, *id.* at 13, and was seen in the building, *id.* at 20.

On November 12, 1988, Timothy Booze (Booze) contacted Anderson to buy a kilogram of cocaine. *Id.* at 8. Anderson then telephoned Dudley and Davis's Mitchellville house. *Id.* Police officers observed Dudley's car at Anderson's headquarters, the Woodner Hotel, later that night and saw Dudley leave the Woodner carrying a package. *Id.* Although the officers on surveillance could not confirm the contents of the package, the government argues it contained the cash proceeds from a cocaine sale. Thereafter, Booze went to the Woodner and picked up the kilogram of cocaine he had ordered. *Id.* at 9. The court found Dudley responsible for the one kilogram of cocaine involved in the transaction and Dudley disputes that finding.

On April 18, 27 and 29, 1989, Dudley and Davis sold Anderson one-half kilogram, one kilogram and one quarter kilogram, respectively, of cocaine. *Id.* at 9–11. Dudley participated in the sales by making arrangements for the sales on the telephone and acting as a courier. She does not contest her responsibility for these amounts, which total 1.75 kilograms.

On May 16, 1989, the Mitchellville house and the 16th Street apartment both were searched. The search yielded 2.4 kilograms of cocaine at the 16th Street apartment, in two unopened, one-kilogram packages and one opened package containing .4 kilograms. An empty wrapper matching the packages was found in the trash.[2] The court found Dudley responsible for at least 3.4 kilograms of cocaine in connection with the search based on the government's assertion that the empty wrapper had contained one kilogram of cocaine. Dudley disputes her responsibility for the entire 3.4 kilograms.[3]

---

**1.** Although briefed and argued separately, we have *ex mero motu* ordered these appeals consolidated for disposition. Fed. R.App. P. 3(b). Dudley and Scott were co-defendants at trial and make the same assignments of error regarding their sentences.

**2.** The search also yielded 40 grams of cocaine base at the 16th Street apartment and 2.4 grams of cocaine base at the Mitchellville house but

these amounts are not included in the court's determination of Dudley's offense level.

**3.** In her brief to this court, Dudley disputes only her responsibility for the 3.4 kilograms, not the amount. Appellant's Br. 14–18. At oral argument, however, her counsel argued that she could not be held responsible for any amount of cocaine in connection with the empty wrapper. Because the issue was raised for the first time at

Dudley was arrested, tried and convicted of one count of conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine and five counts of use of a communications facility to further the conspiracy. The jury hung on the two counts of possession with intent to distribute connected with the May 16 search. At the original sentencing hearing, Dudley (like all other defendants in the conspiracy) was held responsible for the entire 28.9 kilograms of cocaine involved in the conspiracy. Using a base offense level of 34, the court sentenced Dudley to 260 months in prison.

On October 18, 1994, this court affirmed the convictions but vacated and remanded all of the co-conspirators' sentences (except Anderson's) to the district court to make individualized findings regarding the quantity of drugs for which each appellant was responsible. *Anderson*, 39 F.3d at 352. On July 24, 1995, the district court resentenced Dudley, finding her "responsible for not less than 6.15 kilograms of cocaine." Dudley Resentencing Tr. 33. Using a base offense level of 32, the court resentenced Dudley to 200 months in prison.

Scott is Anderson's natural son. Before 1988, Scott lived with his mother and stepfather in El Paso, Texas. In 1988, he came to Washington and soon became involved in his father's cocaine business. By February 10, 1989, when he was sent to assist with problems at one of Anderson's distribution centers at 2440 16th Street, N.W., Scott had become an active participant in the conspiracy. Scott Resentencing Tr. 4. From at least that date until his arrest later that year, Scott ran Anderson's Landover, Maryland distribution center. Numerous recorded telephone conversations attest to his supervisory responsibilities for the Landover operation. *Id.* at 4–14.

There is also evidence that Scott's involvement extended beyond the Landover operation. In late March 1989, Scott transferred money to one of Anderson's other subordinates in furtherance of a plan to rob a cocaine supplier in California. *Id.* at 6. Shortly thereafter, Scott participated in the purchase of one-half kilogram of cocaine from a supplier in Pennsylvania. *Id.* at 7.

Scott was arrested, charged with one count of conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine and four counts of use of a communications facility in furtherance of the conspiracy and convicted on all counts. At his original sentencing hearing, Scott was held responsible for the entire 28.9 kilograms of cocaine involved in the conspiracy. Using a base offense level of 34, Scott was sentenced to 240 months in prison. On remand, the district court resentenced Scott, finding him responsible for not less than 11.25 kilograms of cocaine. *Id.* at 31. The amount combines the seven kilograms involved in the foiled California robbery and another 4.25 kilograms purchased by Anderson from his suppliers, including Dudley and Davis, at various times in March, April and May 1989. Using a base offense level of 32, the court resentenced Scott to 188 months in prison.

## II. DISCUSSION

### A. Dudley

■ Dudley argues first that there is insufficient evidence of her responsibility for the one kilogram transaction on November 12, 1988 and for the 3.4 kilograms attributed to the 16th Street apartment. We review her claim for clear error in the district court's factual findings. *See United States v. Spriggs*, 996 F.2d 320, 326 (D.C.Cir.), *cert. denied*, 510 U.S. 938, 114 S.Ct. 359, 126 L.Ed.2d 323 (1993).

■ Regarding the November 12 sale, Anderson telephoned Dudley's house and Dudley later was seen arriving at Anderson's apartment building and then leaving with a bag, presumably containing cash. Particularly given Dudley's acknowledgment that she participated in three other Anderson cocaine sales by making sales arrangements by telephone and serving as a courier, Appellant's Br. 5, we are convinced that this is sufficient evidence that she was engaged in the cocaine transaction on November 12 as well.

oral argument, we do not consider it. *See United States v. Bost*, 87 F.3d 1333, 1337 (D.C.Cir.1996).

As to the apartment, Dudley signed the lease, paid the rent, made at least one telephone call in furtherance of a drug deal from there, kept bills there, purchased the entertainment system found there and was seen in the building. These facts strongly suggest that Dudley's control over the apartment was at least equal to Davis's. Furthermore, her acknowledged participation with Davis in three other Anderson cocaine sales indicates that she was a full partner in the part of the drug conspiracy run from the 16th Street apartment.

Dudley misses the point with her reliance on cases in which defendants were held responsible for drugs over which they (arguably) had greater control than Dudley did.[4] What she should demonstrate is not that other defendants have been held responsible on more evidence but that other defendants have *not* been held responsible on more evidence. She attempts to rely on *United States v. Dean*, 59 F.3d 1479 (5th Cir.1995), *cert. denied*, — U.S. —, 116 S.Ct. 794, 133 L.Ed.2d 742 (1996), to this end. In *Dean*, the Fifth Circuit rejected the finding that the several defendants were responsible for the drugs found on each other because the district court had not found that the defendants participated in a conspiracy involving each other's drugs. *Id.* at 1495. In Dudley's case, however, there is considerable evidence that she and Davis were in a joint, continuing business distributing cocaine, which business operated in part out of the 16th Street apartment.[5]

Because there is more than sufficient evidence that the 6.15 kilograms for which Dud-

ley was found responsible were within the scope of her conspiratorial agreement with Davis and were reasonably foreseeable by her (indeed, she probably had actual knowledge of them), we reject Dudley's sufficiency of the evidence argument.

Dudley also argues that the district court did not make adequate factual findings regarding the November 12 transaction and the 16th Street apartment. In order to sentence a defendant based on a drug distribution conspiracy, the district court must make individualized findings regarding the quantity of drugs reasonably foreseeable within the scope of the defendant's agreement in joining the conspiracy. *See United States v. Saro*, 24 F.3d 283, 288 (D.C.Cir.1994); *see also United States v. Graham*, 83 F.3d 1466, 1478 (D.C.Cir.1996). We previously remanded Dudley's and her co-defendants' cases (except for Anderson's) for "resentencing based on specific, individualized findings regarding the quantity of drugs each appellant might have reasonably foreseen his or her agreed-upon participation would involve." *Anderson*, 39 F.3d at 353.

As to the November 12 sale, the district court at the resentencing hearing noted the extent to which Dudley and Davis acted together and Dudley's direct involvement in their drug sales. Dudley Resentencing Tr. 33. Regarding Dudley's responsibility for the drugs in the 16th Street apartment, the court found that Dudley signed the lease for the apartment, took telephone calls there, had been seen there and

---

4. In fact, Dudley's control over the apartment seems at least as extensive as the control exercised by the defendants in the cases she cites. *See United States v. Murray*, 67 F.3d 687, 691 (8th Cir.1995) (defendant responsible for drugs found in safe in another's apartment when he had key to apartment, visited apartment and was seen placing safe in apartment), *cert. denied*, — U.S. —, 116 S.Ct. 1339, 134 L.Ed.2d 488 (1996); *United States v. Billops*, 43 F.3d 281, 289–90 (7th Cir.1994) (defendant responsible for drugs found in residence she shared with boyfriend when they lived together and sold drugs together and she admitted selling drugs from residence), *cert. denied*, — U.S. —, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995); *United States v. Beal*, 940 F.2d 1159, 1163 (8th Cir.1991) (defendant responsible for drugs found in girlfriend's

car when they were partners, lived together and had joint bank accounts, she received money from his drug deals and he relied on her advice in deals); *United States v. Foote*, 920 F.2d 1395, 1401 (8th Cir.1990) (defendant responsible for drugs in lockbox when key to box was found in purse containing her driver's license), *cert. denied*, 500 U.S. 946, 111 S.Ct. 2246, 114 L.Ed.2d 487 (1991). Her numerous links to the apartment easily qualify as the "additional facts" she insists must exist to attribute the drugs found there to her.

5. Furthermore, the issue in *Dean* was the adequacy of the district court's findings, not the sufficiency of the evidence itself. *Dean*, 59 F.3d at 1495.

paid the rent. *Id.* at 20, 31. On that basis, the court rejected Dudley's theory that she was not involved in the cocaine sales made from the apartment. These findings, although neither exhaustive nor set forth in a rigorous manner, adequately support the court's decision to hold Dudley responsible for the drugs involved in the sale and the search.

■ Nevertheless, we intended the district court to make detailed findings with respect to the evidentiary links tying Dudley and her co-defendants to the amounts of drugs for which the district court found them responsible. Although it is easy to understand how a sentencing court, with knowledge obtained during plea proceedings or, in this case, after a lengthy trial, knows well the evidence that supports its sentence, on review that knowledge is not discernible except through specific findings. The district court may not simply conclude that the defendant was responsible for a certain amount of drugs "beyond a reasonable doubt," *id.* at 32–33, or that "there's just no question in [the court's] mind about what [it] should find," *id.* at 31. The court's degree of certainty is not the issue. Regardless how certain it is, the court must lay out its factual findings in detail sufficient to make clear the basis for the sentence imposed. *See, e.g., United States v. Lam Kwong-Wah,* 924 F.2d 298, 307 (D.C.Cir.1991) (remanding case for district court to specify factual findings supporting defendant's knowledge of quantity of drugs involved in transaction).

■ The government has an important role to play at the sentencing stage to aid the court in its sentencing decision. We encourage the government to submit to the district court (with notice to and service on the defendant) proposed findings that will support the sentence to be imposed. The defendant, of course, is also free to propose factual findings for the court to consider. Ultimate-

ly, it is the district court's responsibility to ensure the clarity and thoroughness of its findings. As has the Seventh Circuit, we encourage the district court to "adopt the practice of setting forth [its] findings [as to responsibility for drug quantities] in a sentencing memorandum in order to avoid needless misinterpretation by this court on appellate review." *United States v. Billops,* 43 F.3d 281, 289 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995). If written findings prove too cumbersome, it nevertheless is essential that the district court enunciate its findings in detail sufficient to allow this court to conduct its review without struggling to find evidentiary links.

### B. Scott

■ Scott argues that there is insufficient evidence upon which to find that his conspiratorial agreement extended to the California robbery plan and to all of Anderson's cocaine purchases between February 10 and May 9, 1989. Regarding the former, evidence exists that Scott knew of the plan and transferred money in furtherance of it. Scott Resentencing Tr. 6. Regarding the latter, while much of the evidence cited at the sentencing hearing links Scott only to the operation of the Landover distribution center, some evidence confirms Scott's additional role as Anderson's lieutenant in the overall conspiracy.[6] For example, there is evidence that Anderson sent Scott to help out at the distribution center at 2440 16th Street and, as noted, that Scott was involved in the California robbery plan and a drug purchase in Pennsylvania. The evidence thus adequately supports attributing to Scott responsibility for the cocaine involved in the California robbery plan as well as the cocaine the conspiracy handled during his participation as Anderson's lieutenant.

---

6. The district court also discussed the possibility that Scott could be held responsible for all of the drugs Anderson purchased from his suppliers because the cocaine eventually sold through Scott's Landover operation had to come from somewhere and could be presumed to have come from Anderson. Scott Resentencing Tr. 21–24. It does appear that Scott's Landover operation received its drugs from Anderson. Even if those drugs originated with purchases made by Anderson, however, the entire amount of drugs Anderson purchased could not be attributed to Scott without evidence that the scope of the conspiratorial agreement entered into by Scott included all of Anderson's purchases. *See Anderson,* 39 F.3d at 353.

Scott also argues that the district court did not make specific findings regarding the scope of his conspiratorial agreement and the extent to which he reasonably could have foreseen the amount of drugs within the agreement. As to the California robbery plan, the court specifically found that Scott knew people and weapons had been sent to California to set up the robbery. *Id.* at 31. As to the other drugs, the court observed that Scott was involved in cocaine sales in Washington, *id.* at 26, had been to Anderson's central location, *id.*, was a full member of the conspiracy during the period of his involvement, *id.* at 31, and had full knowledge of the conspiracy's activities— more in fact than other members of the conspiracy. *Id.* We cannot say that the district court's factual findings are inadequate. Again, however, we emphasize the importance of thorough findings, particularly in the context of a drug distribution conspiracy involving multiple defendants and various amounts of drugs.

For the preceding reasons, the sentences imposed on Vielka Dudley and Antonio Scott are

*Affirmed.*