UNITED STATES of America, Plaintiff-Appellee,

v.

Rosa BRISCOE, Defendant-Appellant.

No. 84–4010.

United States Court of Appeals, Fifth Circuit.

Sept. 12, 1984.

Charles Merkel, Clarksdale, Miss., for defendant-appellant.

Glen H. Davidson, U.S. Atty., Alfred E. Moreton, III, Asst. U.S. Atty., Oxford, Miss., for plaintiff-appellee.

Appeal from the United States District Court for the Northern District of Mississippi.

Before THORNBERRY, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant Rosa Briscoe appeals her conviction of attempting, by means of an incendiary device, to destroy a building affecting interstate commerce in violation of 18 U.S.C. § 844(i) and (j).[1]  We affirm.

---

**1.** Section 844(i) provides:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be im-

prisoned for not more than ten years or fined not more than $10,000, or both.

Section 844(j) provides:

For the purposes of subsections (d), (e), (f), (g), (h), and (i) of this section, the term "explosive" means gunpowders, powders used for blasting, all forms of high explosives, blasting materials, fuzes (other than electric circuit

## I

In November 1981, Rosa Briscoe and Dot Moore opened The Hired Hand, a western wear store in Batesville, Mississippi. Bill Morrow, a long-time acquaintance of Briscoe, helped Briscoe and Moore in the opening and initial operation of the business. Later, Briscoe told Morrow that she was dissatisfied with her partner and wished to terminate the partnership. Around February 1, 1982, she told Morrow "the store needs to burn and it needs help." She then asked Morrow to find an arsonist for her. Morrow was to receive fifty percent of the overpayment from the insurance company for his participation in the arson scheme. Morrow then found Larry Hentz, who offered his services as an arsonist for $5,000. Although Briscoe objected to this high fee, she told Morrow to proceed.

On Saturday, February 27, 1982, Hentz, Lee Harden and Morrow met at Morrow's home and then proceeded to The Hired Hand, where they had arranged to meet Briscoe. Hentz and Morrow drove together, while Harden went in his father's white and blue pick-up truck. Hentz quoted a "take it or leave it" price of $5,000 to Briscoe. She replied "go ahead." Hentz directed Morrow and Briscoe into an adjacent storage area behind a curtain in the store. The Hired Hand had two separate incoming telephone lines, one in the store and one in the storage area. Hentz instructed Briscoe to telephone the store. After she dialed the store telephone number, he said "that's good ... just put the phone back on the receiver and don't dial it again." Morrow observed that Hentz had taken some sandpaper and taped it to the telephone bell and had taped two large kitchen matches to the striker on the telephone so that they would hit the sandpaper when the telephone in the store rang. Morrow also saw Harden place a pipe wrench on the gas pipes; Hentz then instructed Morrow, Briscoe and Harden not to strike any matches and to refrain from

breakers), detonators, and other detonating agents, smokeless powders, other explosive or

smoking. Before they left the premises, Morrow, Harden and Hentz took five to eight pairs of new cowboy boots from the store.

That evening, the store was destroyed by fire. The testimony of various witnesses established that a blue and white truck with two occupants left the fire scene at a high rate of speed. One witness was able to positively identify the truck because she knew its owner, Shelton Hentz. Both police officer Legge and a Mr. Broom testified that The Hired Hand's front glass was intact when they arrived, with the exception of a hole in the glass to the right of the front door. The owner of the adjacent business, a flower company, testified that of the two businesses, The Hired Hand was damaged much more extensively by fire.

Approximately one year later, as the result of an investigation concerning another crime involving Hentz, the authorities reopened their investigation of the fire. Michael Wayne Johnson, a convicted felon who had been a cellmate and friend of Larry Hentz while serving in the federal penitentiary, agreed with law enforcement agents to wear a body recorder and tape record his conversations with Briscoe. On February 4, 1983, Johnson approached Briscoe, informing her that Hentz needed money for his defense. Briscoe initially denied owing Hentz any money, but later stated "[a]nd you tell Larry I owe him money, and when I can, one way or another I want to give it to him now." She also stated that Hentz had better quit "telling anything and had better keep his mouth shut ...." At another meeting, she gave Johnson $100 for Hentz.

Roger Hentz, the brother of defendant Larry Hentz, testified that after the fire, Harden gave him a new pair of cowboy boots and told him that he and Larry Hentz had burned The Hired Hand. Harden further related to Roger Hentz that he had thrown a bottle of gas through the window of the store because their attempt to use a

incendiary devices ....

telephone to start the fire had been unsuccessful. Harden also stated that they had driven Shelton Hentz's blue and white Chevrolet pick-up truck to the store to start the fire.

On June 23, 1983, Briscoe, Harden and Hentz were indicted in a six-count indictment. All defendants were charged in counts one and two with mail fraud in aiding and abetting each other in a scheme, and artifice to obtain insurance proceeds from United States Fidelity and Guaranty Company; in count three for attempted destruction of The Hired Hand by use of a telephone incendiary device; and in count four for destruction of the store by the use of a molotov cocktail device. Only Hentz was charged in counts four and five. Briscoe's motions for a speedy trial and for a severance from the other defendants were granted. She was convicted in a jury trial on count three, but acquitted of the other counts.

Briscoe contends, inter alia, that (1) the counts of attempted arson and arson are multiplicitous; (2) the evidence is insufficient to support her conviction of attempted arson; (3) Harden's statement to Roger Hentz was admitted improperly as a statement against penal interest; and (4) the admission violates the principle announced in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

2. Count three charges:

    On or about February 27, 1982, in the Northern District of Mississippi, ROSA BRISCOE, OWEN LEE HARDEN and LARRY SHELTON HENTZ, defendants herein, aided and abetted by each other and by other persons to the Grand Jury known and unknown, did maliciously attempt to damage and destroy, by means of an explosive, a building and other real and personal property used in interstate commerce and in activities affecting interstate commerce, that is they did make and attempt to activate and detonate an improvised explosive and incendiary device consisting of methane gas, matches, sandpaper and an electrical impulse transmitted through a telephone wire, for the purpose of burning and destroying The Hired Hand western apparel store in Batesville, Mississippi;

    in violation of Section 844(a), (i) and (j) of Title 18 of the United States Code.

## II

### A

Briscoe asserts that counts three and four of the indictment are multiplicitous.[2] This assertion is meritless. The determination of whether a charge is multiplicitous is whether each charge requires proof of different elements. *United States v. Crosby,* 713 F.2d 1066, 1079 (5th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity. *Crosby,* 713 F.2d at 1079, *United States v. Cantu,* 557 F.2d 1173, 1176 (5th Cir.), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978). Count three charges Briscoe with attempting to burn The Hired Hand by the telephone-matchstick device while count four charges defendant with the actual burning of the building by a molotov cocktail. They obviously do not charge offenses with the same elements and are not multiplicitous.

### B

Briscoe contends that the evidence is insufficient to support her conviction of attempted arson. The standard of review for sufficiency of the evidence is whether viewing the evidence in the light most fa-

Count four charges:

    On or about February 28, 1982, in the Northern District of Mississippi, ROSA BRISCOE, OWEN LEE HARDEN and LARRY SHELTON HENTZ, defendants herein, aided and abetted by each other and by other persons to the Grand Jury known and unknown, did maliciously damage and destroy, by means of an explosive, a building and other real and personal property used in interstate commerce and in activities affecting interstate commerce, that is they did use molotov cocktail-type improvised explosive and incendiary devices consisting of soft-drink bottles filled with gasoline to burn The Hired Hand western apparel store in Batesville, Mississippi;

    in violation of Section 844(a), (i) and (j) of Title 18 of the United States Code.

vorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), any reasonable trier of fact could have found that the evidence established the defendant's guilt beyond a reasonable doubt. *United States v. Ledezma-Hernandez*, 729 F.2d 310, 313 (5th Cir.1984), *United States v. Brown*, 699 F.2d 704, 710 (5th Cir.1983).

To be guilty of an attempt, the defendant (1) "must have been acting with the kind of culpability otherwise required for the commission of the crime which he is charged with attempting," and (2) "must have engaged in conduct which constitutes a substantial step toward commission of the crime." *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975). A substantial step is one which strongly corroborates the "firmness of the defendant's intent." *Id.* The acts, considered alone, must "mark the defendant's conduct as criminal in nature." *United States v. Oviedo*, 525 F.2d 881, 885 (5th Cir.1976). Briscoe's conduct meets these criteria.

Briscoe told Morrow "the store needs to burn and it needs help;" she enlisted the aid of several people to assist in burning the store. In addition, the testimony of the participants reveals that Briscoe participated in testing the telephone incendiary device. This evidence is more than sufficient to support the jury's finding that Briscoe was guilty of attempted arson.[3]

### C

Briscoe argues that the district court incorrectly admitted Harden's statement to Roger Hentz as a declaration against penal interest, and that the admission also contravenes *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We disagree.

■■■ The trial court admitted Harden's statement as a declaration against penal interest under Federal Rule of Evidence 804(b)(3), which provides:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Three elements must be satisfied under this hearsay exception: (1) the declarant must be unavailable; (2) the statement must be against the declarant's penal interest; and (3) corroborating circumstances must indicate the trustworthiness of the statement. *United States v. Mock*, 640 F.2d 629, 631 (5th Cir.1981), *United States v. Robinson*, 635 F.2d 363, 364 (5th Cir.), *cert. denied*, 452 U.S. 916, 101 S.Ct. 3050, 69 L.Ed.2d 419 (1981). At the hearing conducted by the court out of the jury's presence, Harden was called as a witness, but invoked the fifth amendment and refused to testify. Thus Harden was unavailable as a witness. *United States v. Robinson*, 635 F.2d at 364, *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir.1978). Harden's statement clearly was against his penal interest since admitting his participation in the arson of The Hired Hand, subjected him to criminal liability.

■■■ We will uphold the district court's determination of the trustworthiness of an

---

**3.** See, e.g. *United States v. Brown*, 604 F.2d 347 (5th Cir.1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1649, 64 L.Ed.2d 237 (1980) (evidence that defendant made agreement with another for acquisition of explosives, described building to be destroyed and sent two people to reconnoiter and inspect building in order to prepare for its destruction sufficient to support conviction of attempt to destroy building by explosives), *United States v. Conway*, 507 F.2d 1047 (5th Cir. 1975) (hiring people to bomb building and showing them film of building to be bombed sufficient to support conviction of attempt by means of explosives to bomb building.)

out-of-court statement unless it is clearly erroneous. *United States v. Robinson*, 635 F.2d at 364, *United States v. Alvarez*, 584 F.2d 694, 701 (5th Cir.1978). The district court thoroughly examined Harden's statement in light of the other evidence in the case and found that it was fully corroborated. Corroborating evidence included: testimony that Hentz, Morrow and Harden removed several pairs of new cowboy boots from the store and Harden gave Roger Hentz a pair of these boots; Morrow's testimony concerning the telephone-matchstick incendiary device and the presence of Morrow, Hentz and Harden at The Hired Hand shortly before the fire; eyewitness testimony identifying the blue and white truck leaving the burning store. We conclude that the district court's determination that Harden's statement was fully corroborated by the evidence and therefore trustworthy is not clearly erroneous.

 Under *Bruton*, the "[i]ntroduction of a defendant's extrajudicial statement that implicates his co-defendant violates the co-defendant's right to confront witnesses against him because he cannot call the declarant—his co-defendant—to the stand for cross-examination." *United States v. Archer*, 733 F.2d 354, 360 (5th Cir.1984), *Bruton*, 391 U.S. at 136–37, 88 S.Ct. at 1628, 20 L.Ed.2d at 485–86. For *Bruton* to apply, however, there must be a joint trial with co-defendants. Briscoe's trial was severed from that of the other defendants; thus *Bruton* is inapplicable.

Briscoe also contends that the trial court erred in: denying her motion for a directed verdict; admitting the testimony of Michael Johnson and sending transcripts of the Johnson tapes to the jury; refusing to admit her diaries as business records under Fed.R.Evid. 803(6); and in denying her motion for a new trial. We have carefully considered these asserted points of error; none have even a semblance of merit and are rejected.

AFFIRMED.