IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 01-31481

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRYANT ZENO,
also known as Bryant J. Zeno,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
(No. 01-CR-166)

---

November 15, 2002

Before WIENER and STEWART, Circuit Judges, and RESTANI, Judge.[*]

PER CURIAM:[**]

Defendant-Appellant Bryant Zeno was convicted of one count of a two-count indictment

charging him with violations of the Federal Gun Control Act, 18 U.S.C. §§ 922(g)(1) and 924(a)(2)

(2000). Zeno appeals several evidentiary rulings of the district court, claiming the court erred in (1)

excluding, as hearsay, the testimony of Sharlie Miller, who would have testified that her former

---

[*] Judge of the United States Court of International Trade, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

roommate, Elbert Jones, confessed to the crime; (2) excluding the testimony of alibi witness Denise Parker, because she intended to assert her Fifth Amendment right not to testify on cross-examination as to her drug activity during the events in question; and (3) requiring Zeno to display his tattoo to the jury. Finally, Zeno contends that these erroneous rulings cumulatively, if not individually, prevented him from presenting a defense and warrants a new trial. Finding no reversible error in any of the district court's evidentiary rulings, we affirm Zeno's conviction and sentence.

## I. FACTS AND PROCEEDINGS

Defendant-Appellant Bryant Zeno was charged, in a two-count indictment, with unlawful possession of a firearm by a convicted felon[1] in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count one of the indictment charged Zeno with possession of an AK-47 rifle, and count two charged him with possession of a Ruger 9 mm. pistol.[2] On October 3, 2001, Zeno was found guilty as to count one of the indictment. On December 19, 2001, the district judge sentenced Zeno to 33 months imprisonment and three years of supervised release.

This case arose out of a shooting that took place on June 1, 2001, in New Orleans, Louisiana. Around 5:30 p.m., a man began shooting at cars near the corner of Abundance Street and Elysian Fields. At trial, the Government introduced the testimony of several eyewitnesses, some of whom had positively identified Bryant Zeno as the shooter at the scene, and others who had not seen the shooter's face but who described him as a tall, slim African-American male fitting Zeno's physical description. The Government's witnesses all denied that the shooter could have been a shorter,

---

[1] The parties stipulated that Zeno was convicted of a felony in 1994, and therefore was prohibited under both Louisiana and federal law from possessing a firearm.

[2] Both weapons were recovered in a closet in a vacant Abundance Street apartment once occupied by Zeno and his mother.

heavier man fitting Elbert Jones's description.[3]

Zeno's defensive theory was that Jones was the shooter. Zeno called three witnesses in his defense: himself, Reginald LeBlanc, and Sharlie Miller. LeBlanc testified that at the time of the shooting, he and Zeno were gambling in Denise Parker's apartment. Miller testified that she owned the rifle used in the shooting, and that she noticed the gun was missing near the end of June 2001. Miller also testified that Elbert Jones and his girlfriend were living with her at that time.

Zeno attempted to offer additional testimony from Miller and wanted to call Denise Parker as a fourth witness. In response to questioning out of the presence of the jury, Miller explained that she purchased the AK-47 for a hunting trip[4] and that she selected it because it "was the prettiest one up there." Miller also told the trial court that she confronted Jones when she noticed the gun was missing at the end of June 2001. According to Miller, Jones first denied taking the gun, but then offered to pay her $600 for it. Upon further questioning, Jones allegedly told Miller that he took the gun because people he thought killed his friend were riding around in the neighborhood, that he shot at a car, and that a friend of his was arrested for the offense. The court determined that Miller's proposed testimony was hearsay and, to be admissible, would need to qualify as a declaration against penal interest under Federal Rule of Evidence 804(b)(3). After questioning Miller, the court concluded that Jones's statement did not fall within the hearsay exception because it lacked sufficient

---

[3] Elbert Jones was described as "stocky" and "heavyset." Moreover, one witness, Damian Decuir, knew Elbert Jones from the neighborhood and affirmatively testified that Jones was not the person who shot at his car on June 1, 2001.

[4] Miller claimed that she purchased the AK-47 strictly for use in deer hunting even though she had never hunted, did not have a hunting license, and was not even aware of the required hunting course necessary to obtain a hunting license. During cross-examination, Miller admitted to never loading or shooting the weapon and that the cash purchase price of $600 was a significant portion of her monthly income.

3

corroboration clearly indicating the trustworthiness of the statement as required by the Rule.

The court also excluded the testimony of Denise Parker, another proffered alibi witness for Zeno. Parker would have testified that Zeno was playing dice in her apartment at the time of the shooting. Parker also would have testified that immediately after the shooting, Elbert Jones asked Parker if she witnessed the shooting, and, when she denied it, that Jones commented that Parker was fortunate because he did not want to have to "take her out." The court excluded Parker's testimony, concluding that, because Parker would invoke her Fifth Amendment right not to testify to drug-related activities, the Government would be unfairly prevented from cross-examining Parker on a critical issue, i.e., her drug use and drug activities on the day of the shooting.

Zeno waived his Fifth Amendment rights and took the stand in his own defense. Zeno testified that he saw Jones on June 1, 2001, both before and after the shooting. Zeno testified that prior to the shooting, Jones told him there would be trouble and that Zeno and his friends should leave the area. Zeno explained that the dice game continued at Denise Parker's house, when shots rang out from the street. Zeno claimed to have seen Jones running with a gun immediately thereafter and testified that Jones said to him, "you didn't seen nothing." According to Zeno, Jones then ran into Zeno's old apartment, then fled the area.

On cross-examination, Zeno denied any "special liking" for machine guns and denied having photographs or pictures of machine guns. When asked if he had a tattoo of a machine gun on his body, Zeno replied that the image "[a]in't no machine gun." At that point, at the Government's request and over defense objection, Zeno displayed his tattoo of a machine gun to the jury. In response to the Government's questions, Zeno stated that the words inscribed above the tattoo were "f--- all y'all."

4

Zeno now appeals three evidentiary rulings: (1) the district court's exclusion of Sharlie Miller's proffered hearsay testimony that Elbert Jones admitted to the shooting that gave rise to Zeno's charge; (2) the district court's exclusion of Denise Parker's testimony that she was with Zeno playing dice at the time of the shooting, and that Elbert Jones later threatened to "take her out" if she had witnessed the shooting; and (3) the district court's ruling, over defense objection, requiring Zeno to show the jury a tattoo on his arm, which depicts a machine gun and the expletive "f--- all y'all."

## II. ANALYSIS

### A. Exclusion of Elbert Jones's Statement Against Penal Interest

This court reviews a district court's assessment of the trustworthiness of an out-of-court statement for clear error. United States v. Dean, 59 F.3d 1479, 1492 (5th Cir. 1995); United States v. Briscoe, 742 F.2d 842, 846-47 (5th Cir. 1984). "If a reasonable view of the evidence supports the trial court's finding that such a statement is not reliable, that finding must be sustained on appeal." United States v. L'Hoste, 640 F.2d 693, 696 (5th Cir. 1981).

Zeno asserts that the district court erred by excluding Elbert Jones's alleged confession to Sharlie Miller. According to Zeno, the district court misinterpreted Federal Rule of Evidence 804(b)(3) and erroneously focused its inquiry on the credibility of Miller, the in-court witness, rather than on the trustworthiness of Jones's out-of-court statement. According to Zeno, because Miller was available and subject to cross-examination, her credibility should have been evaluated by the jury, not the district judge. Further, Zeno contends that the district court ignored several corroborating circumstances that indicated the trustworthiness of Jones's statement.[5] Finally, Zeno argues that, in

---

[5] First, Zeno notes that the ATF confirmed that Miller owned the AK-47 rifle and that Miller testified that Elbert Jones lived with her and had access to the weapon. Second, according to another (excluded) witness, Denise Parker, Jones was near the scene of the crime and threatened to "take her

addition to corroborating evidence, the circumstances surrounding the making of the statement militate in favor of admission. Zeno emphasizes that the statement was made spontaneously to a personal acquaintance, in response to Miller's direct questions about her rifle.

Federal Rule of Evidence 804(b)(3) governs the admissibility of hearsay statements against the declarant's penal interest. To be admissible under the rule, a declaration must meet a three-part test designed to ensure its trustworthiness: (1) the declarant must be unavailable; (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement must be corroborated by circumstances clearly indicating its trustworthiness. Dean, 59 F.3d at 1492 (citations omitted). In this case, the parties agree that the first and second prongs of this test are satisfied. Elbert Jones's exercise of his Fifth Amendment right qualifies as "unavailability" under Rule 804, see, e.g., Briscoe, 742 F.2d at 846, and his alleged confession subjected him to criminal liability. Therefore, the issue before the court is whether the district court was clearly erroneous in its finding that the out-of-court statement was not sufficiently corroborated by circumstances clearly indicating its trustworthiness. See FED. R. EVID. 804(b)(3); Dean, 59 F.3d at 1492.

This court has weighed several factors, including the credibility and demeanor of the in-court

---

out" if she witnessed the incident. Third, an unidentified "911" caller described the shooter as "stocky" and the same approximate height as Jones. Fourth, Henry Pittman, an eyewitness to the shooting, testified that the shooter tilted his head to the left, and Elbert Jones tilted his head in a similar manner during an appearance before the jury (the court notes, however, that Pittman also described the shooter as someone of Zeno's height and weight and denied that the shooter could have been a shorter, heavier person).

witness, when assessing the trustworthiness of an exculpatory out-of-court statement.[6]  In United

States v. Bagley, the court explained the permissible scope of the trial court's inquiry and appellate

review under Rule 804(b)(3):

> The requirement that the corroborating circumstances "clearly indicate" the trustworthiness of the statement should be construed to permit the trial judge, who has the opportunity to judge the credibility of the witness, to exercise discretion in determining whether he is satisfied that the statement is trustworthy.  If there was evidence before him from which he could conclude that the statement was not actually made (or would not be reliable evidence of the truth of the matter asserted) his exclusion of the statement should be affirmed.

537 F.2d 162, 168 (5th Cir. 1976), cert. denied, 429 U.S. 1075 (1977).  The court explained that

witness credibility is relevant in determining whether to sufficiently credit the testimony to find that

the trustworthiness of the proffered statement is clearly established.  Id.; see also United States v.

Thomas, 571 F.2d 285, 290 (5th Cir. 1978) (assessing the credibility of the proposed in-court witness

as part of Rule 804(b)(3)'s trustworthiness analysis).

In this case, the district court cited several reasons for the exclusion of Elbert Jones's alleged

statement against interest.  Relying heavily on the veracity of the proffered witness, Sharlie Miller,

the court noted that "under some very strange circumstances" Miller did not recall the type of weapon

she purchased, could not describe the weapon, and did not report Jones's alleged confession to law

enforcement personnel until confronted by ATF agents.  The court explained, "I find . . . no

trustworthy corroborating circumstances from Ms. Miller's testimony at all. . . . she is not a reliable

---

[6] We note that this statement attributed to Jones was proffered by Zeno as exculpatory and thus does not raise Confrontation Clause issues.  See United States v. Sarmiento-Perez, 633 F.2d 1092, 1100 (5th Cir. 1981) ("[A] clear distinction must be drawn between statements against penal interest that are offered to exculpate a criminal defendant, as against those that are offered to inculpate him.  The admission under [Federal] Rule [of Evidence] 804(b)(3) of . . . statements that inculpate a criminal defendant results in the diminution of rights traditionally viewed as essential and fundamental components of an accused person's right of confrontation.").

7

witness and I would not hinge or let this jury hear such testimony because it is, in my opinion, devoid of [corroboration]." In concluding that the hearsay should be excluded, the court explained that "Mr. Jones is not at all the person that's described by any of the witnesses . . . [t]hey all describe the shooter as someone tall and slender." Thus, the court excluded Jones's statement against interest because corroborating circumstances did not "clearly indicate" its trustworthiness. See FED. R. EVID. 804(b)(3).

We conclude that a reasonable view of the evidence supports the trial court's finding that Jones's statement was not reliable. See L'Hoste, 640 F.2d at 696. Our precedent supports the district court's consideration of Sharlie Miller's credibility and demeanor in assessing the trustworthiness of Jones's alleged statement against interest. In addition, given Miller's odd statements as to her reasons for owning the gun, the court's general concern as to her credibility appears well-founded and warranted a particularly careful assessment of the trustworthiness of Jones's alleged statement. The district court properly considered other factors that led to the conclusion that the statement was not trustworthy. The court noted, for example, that Miller did not report Jones's confession to police (or anyone else) until confronted by ATF agents weeks after Jones's alleged confession. The court also emphasized that the proffered statement was not supported by other evidence adduced at trial, which indicated that the shooter was tall and slender. Because the district court's assessment of the statement's trustworthiness was not clearly erroneous, we sustain the trial court's exclusion of Jones's alleged confession.

**B. Exclusion of Denise Parker's Testimony**

A district court's decision to admit or exclude evidence is reviewed for abuse of discretion. United States v. Gutierrez-Farias, 294 F.3d 657, 662 (5th Cir. 2002). Zeno asserts that the district

8

court erred in excluding the testimony of Denise Parker, who would have testified that at the time of the shooting, Zeno was playing dice in her apartment, and that immediately after the shooting Elbert Jones threatened to "take her out" if she had witnessed the events. Because Parker was facing state drug charges and had previously admitted to using crack cocaine on the day of the Abundance Street shooting, her testimony raised Fifth Amendment concerns. Parker's court-appointed counsel informed the court that while her alibi testimony posed no self-incrimination problems, he counseled Parker not to testify to "any drug activity or other criminal activity."

The district court excluded Parker's testimony because she would assert her Fifth Amendment right not to testify to certain drug-related issues. In so ruling, the court emphasized the "unjust" effect of allowing Parker to testify as an alibi witness without being subject to a "very reliable source of cross-examination," i.e., her drug use. Although not necessarily probative of her truthfulness, Parker's alleged use of drugs at the time of the events in question would be probative of other traits such as capacity, perception, and memory, and would have been a proper subject of cross-examination.[7] Parker's assertion of her Fifth Amendment privilege was prompted by reasonable apprehension that her statements would incriminate her and embraced matters material to her personal knowledge of the events in question. Whether Parker was using crack cocaine at that time directly relates to her ability to recall and relate key events. We therefore conclude that the district court did not abuse its discretion in excluding her testimony. See United States v. Boyett, 923 F.2d 378, 380 (5th Cir. 1991).

---

[7] See, e.g., MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 607.5, at 102 (5th ed. 2001) ("Use of drugs at the time of the event related by a witness . . . is a proper subject of cross-examination . . . . Both drugs and alcohol may affect a witness' ability to perceive, record, recollect and narrate, i.e., personal knowledge.").

## C. **Display of Zeno's Tattoo**

Zeno argues that the district court's ruling requiring the display of his "gun" tattoo was an abuse of discretion. Zeno was ordered to display his tattoo after he responded in the negative to a series of questions relating to his interest in machine guns. Federal Rule of Evidence 403 governs the admission of extrinsic evidence to contradict a witness's testimony. United States v. Lopez, 979 F.2d 1024, 1034 (5th Cir. 1992). Under the Rule, "[e]xtrinsic evidence . . . is admissible . . . to contradict specific testimony, as long as the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice." Id.

Here, the district court did not specifically apply Rule 403's balancing test, but it nevertheless did not abuse its discretion in finding that the display of Zeno's tattoo was admissible to contradict the defendant's factual testimony. The district court presumably found the value of the "gun" tattoo outweighed the potential prejudice, and, in light of the defendant's negative responses to the Government's questions, the court's decision admitting that evidence was not an abuse of discretion.

## D. **Cumulative Error**

Finally, Zeno argues that the district court's errors cumulatively, if not individually, require reversal. Zeno contends that "the district court excluded virtually the entire defense, while admitting inflammatory evidence bereft of probative value." Zeno also emphasizes the "closeness" of the case, as evidenced by the jury's lengthy deliberations and Zeno's acquittal on one of two charges.

The cumulative effect of several trial errors may require reversal, even when no single defect would warrant such a result. United States v. Lindell, 881 F.2d 1313, 1327 (5th Cir. 1989). Cumulative error, however, "is a rarity." Id. Moreover, the cumulative effect of the district court's rulings is relevant only if the court finds one or more errors. United States v. McIntosh, 280 F.3d

10

479, 484 (5th Cir. 2002) (finding that because the defendant "has not established *any* error . . . there is nothing to cumulate"). In this case, the cumulative error doctrine is inapplicable because Zeno has failed to establish that any of the district court's rulings were clearly erroneous or an abuse of discretion.

In any case, Zeno was able to mount a defense by introducing the testimony of Sharlie Miller as to Jones's access to the gun, and by presenting his alibi through Reginald LeBlanc as well as through his own testimony. Given LeBlanc's backing of Zeno's alibi, the alibi testimony of Parker would have been cumulative. Only Jones's alleged out-of-court statements would have added anything new, and they were properly excluded.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.